**BROCK & BLEVINS COMPANY, Inc.**

v.

**The UNITED STATES.**

No. 292-59.

United States Court of Claims.

April 16, 1965.

Gaines V. Palmes, Washington, D. C., for plaintiff.

John R. Franklin, Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DURFEE, Judge.

This is a suit to recover damages for delays due to the fault of the Government arising out of a subcontract (later assigned to the Department of the Army), entered into by plaintiff with the prime contractor, Hiwassee Constructors on October 27, 1952. The subcontract covered rehabilitation of piping, mechanical and electrical equipment of the North Acid area of the Volunteer Ordnance Works at Chattanooga, Tennessee.

Plaintiff claims damages for breach of the subcontract through unreasonable delays caused by defendant which increased its cost for equipment, overtime and overhead. More specifically, plaintiff claims that defendant's refusal to grant time extensions until after the expiration of the original contract performance period coupled with defendant's demands throughout the original performance period that plaintiff complete its subcontract on time despite delays caused by defendant, caused great overtime expense, thereby increasing the cost of performing the contract.

Defendant, besides denying that it caused any delay to plaintiff, has raised several defenses including lack of privity between plaintiff and defendant, accord and satisfaction, and plaintiff's failure to exhaust its administrative remedy. We believe that plaintiff's claim may be disposed of on the ground that an accord and satisfaction was agreed upon by the parties, and therefore will limit ourselves to that aspect of the case.[1]

At the outset, let us make clear our belief that there is no doubt that plaintiff suffered considerable expenses as the result of Government occasioned delays. Our findings of fact establish that plaintiff was delayed a total of 60 days in the completion of the work. It would be far too cumbersome to examine the specifics of each delay claim in the body of this opinion, so for the sake of brevity, they will not be delved into further.

The contract in issue contained no specific provision authorizing payment for delays, such as a "suspension of work" clause which is sometimes so treated. It did contain a "changes" clause which provided for an equitable adjustment for the reasonable cost of performing extra work. Due to hastily drafted and incomplete specifications, plaintiff was compelled to perform a great amount of extra work, work not included in the original contract specifications. At various times during the performance of the contract, plaintiff was given equitable adjustments in the form of additional compensation

1. We might comment, however, that we believe there was sufficient privity in this case to allow the subcontractor plaintiff to bring suit against the Government. There was an assignment of the subcontract by the prime contractor to the Government, together with all obligations and responsibilities of the prime contractor. The acceptance of this assignment by defendant is sufficient to establish the privity necessary for plaintiff's suit.

for the performance of extra work. Also, at various times during performance, plaintiff requested extensions of time due to the quantity of extra work ordered outside the original contract. These requests were rejected however, and plaintiff had to use extra help and pay overtime wages in an attempt to complete the contract on time. Finally, eight days after the scheduled completion date of the contract, plaintiff was allowed an extension of time. Subsequent extensions of time were thereafter given; however, they came too late to benefit plaintiff. The rejections of plaintiff's requests for time extensions caused plaintiff to make unnecessary expenditures in overtime in order to meet a completion date which intervening circumstances (Government caused delays) had made unrealistic. The subsequent time extensions which were granted could in no way have helped plaintiff avoid the previous investments in overtime. Had plaintiff been able to anticipate the time extensions which were eventually granted, the overtime and extra forces which it employed to accelerate completion of the original subcontract work would have been sharply reduced, if not eliminated.

After completion of the contract, plaintiff was not satisfied with two contract modifications which had been proposed as payment for some of the aforementioned extra work. Plaintiff accepted the sums offered, but not unqualifiedly, as it reserved its rights in this matter and specifically stated in written form that it was appealing to the Chief Engineer, Washington, D. C. for the additional sums to which plaintiff believed it was entitled.

After a duly filed notice of appeal, plaintiff filed its appeal with the Engineers Claims and Appeals Board, seeking payment of $265,688.03 as additional equitable adjustment under the contract. Representatives of plaintiff then agreed to meet with the Division Engineer, South Atlantic Division, Corps of Engineers, in an attempt to work out a fair price for the performance of the work in issue.[2] The parties met for a 30-day period, and considered in great detail the aspects of plaintiff's claim. Thereafter, the Division Engineer put out a detailed Conferees Report on Review of Claim which concluded that plaintiff was entitled to be paid $114,673.28 more than it had been paid in the two aforementioned contract modifications. The following conclusions were among those agreed to by the conferees:

(1) A forty-hour work week was used from the start of construction through January 1953.

(2) A forty-eight hour work week or more was used from February 1953 through to completion.

(3) There was approximately a 300 percent turnover in labor.

(4) There was no delay in construction due to late delivery of materials or equipment.

(5) The agreement on the amount of direct labor involved in the disputed items was increased by one-third to provide for lost time, on the basis of two hours lost time for each 8 hour work day.

(6) An amount of 16⅔ percent was included in the estimates for overtime premium payment, based on an average week of 48 hours with premium payment for 8 hours.

(7) Allowances for overhead included, among other matters, costs of supervision, tools, equipment and supplies, and equipment operators.

The Conferees Report was sent to the contracting officer who would not accept it. However, plaintiff then submitted the dispute to the Engineers Claims and Appeals Board on the record, including the Conferees Report. The Board found plaintiff due the sum of $116,057.28. The Chief of Engineers approved the decision. Modification No. 14 to the contract was issued, authorizing payment of this sum

---

2. The Division Engineer could not settle the claim, but could only make recommendations to the contracting officer, and failing the latter's approval, submit the recommendations to the Engineers Claims and Appeals Board.

to plaintiff. Plaintiff signed its acceptance and made no reservations, exceptions, or other claims at that time.[3] Plaintiff executed a final payment estimate in the amount of $116,057.28 under the certification that "The above bill is correct and just * * *."

■ From the above resume of the pertinent facts in this case, we conclude that an accord and satisfaction exists, which precludes plaintiff from any further recovery. There are certain elements of the equitable adjustment here that are virtually interchangeable with delay-damage ingredients. In fact, it is evident that much of the extra work came about *as a result of* the delay. Plaintiff maintains, and we agree, that had a time extension been given in order to rectify the hold up in performance of the contract, plaintiff would not have had to hire extra labor and pay overtime wages. Deciding when delay damages begin and equitable adjustment for extra work ends is not an easy task in this case. One is dependent upon or related to the other. Plaintiff fully realized this fact when it made its claim for equitable adjustment for extra work. The conclusions of the Conferees Report, *supra,* bears this out. Among other things it concluded that a forty-eight hour work week was used part of the time; that the amount of direct labor was increased to provide for lost time; that an amount of 16⅔ percent was included in the estimates for overtime premium payment, and that overhead included cost of supervision, tools, equipment, supplies and equipment operators. Plaintiff had submitted this information to the Division Engineer, who had considered it, and both parties agreed to the conclusion. It was upon this conclusion that the Division Engineer recomended the additional payments to plaintiff which were accepted without

recourse by plaintiff when it signed Modification No. 14 to the contract.

The sum asked for now in the breach action for delay damages is based upon the same elements considered in the Conferees Report, i. e., overtime and extra labor, and overhead. We can reach no other conclusion than that plaintiff at the time it agreed to the equitable adjustment based upon the Conferees Report, also agreed to a settlement of any claim for delay damages. The claim for damages was necessarily considered by both parties as an integral part of the claim for extra work. Conclusion No. 4 of the Report even specifically concerned itself with delay. It stated: "There was no *delay* in construction due to late delivery of materials or equipment." [Emphasis added.]

There is a striking similarity between this case and the case of Seeds & Derham v. United States, 92 Ct.Cl. 97 (1940), cert. denied 312 U.S. 697, 61 S.Ct. 731, 85 L.Ed. 1131 (1941). In Seeds & Derham, supra, extra work was performed under the contract by plaintiffs. This extra work caused delay damages for increased overhead and labor. Plaintiffs agreed to a contract modification under the changes clause for the additional work. Included in the contract modification was an equitable adjustment for the cost of the extra work. The court found that plaintiffs understood that the additional sum to be paid was intended to cover the entire increase in cost, whether from delay or otherwise. As a result of this finding, plaintiffs were denied recovery of delay damages for breach of contract.

The court stated at p. 110, of 92 Ct.Cl.:

"It is clear that the claim now presented is an afterthought, and that the plaintiffs understood at the time they agreed to the change order that the

---

3. In substance this was a settlement, although in form it was a modification agreement entered into pursuant to findings of the Engineers Claims and Appeals Board and decision of the Chief of Engineers in connection with plaintiff's ap-

peal from the contracting officer. The opinion of the Board was in reality a ratification of the parties' agreements rather than an adjudication, except as to one small issue which is not presently involved.

sum therein stipulated was to cover the entire increase in cost."

We believe the above quoted language is applicable to plaintiff's intent in this case when it signed Modification No. 14 to the contract.

■ Discharge of a claim by accord and satisfaction "means a discharge by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant as full satisfaction of his claim." 6 Corbin, Contracts, § 1276 (1962). An accord and satisfaction has been aptly described in the following manner:

"The essential elements of an effective accord and satisfaction are proper subject matter, competent parties, meeting of the minds of the parties, and consideration. And its most common pattern is a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute. * * * *"

Nevada Half Moon Mining Co. v. Combined Metals Reduction Co., 176 F.2d 73, 76 (10th Cir. 1949), cert. denied 338 U.S. 943, 70 S.Ct. 429, 94 L.Ed. 581 (1950). The above definitions perfectly describe the transactions of the parties here. We therefore conclude that there exists an accord and satisfaction which bars this suit.

■ The question arises as to how an equitable adjustment may include damages for breach, when only this court has jurisdiction to entertain an action for breach. The answer is not difficult. It is stated in Cannon Construction Co. v. United States, 319 F.2d 173, 179, 162 Ct.Cl. 94, 105 (1963):

"Significantly, plaintiffs have cited us no cases where this court has invalidated, on the ground of lack of authority, any agreement made by the contracting officer in the settlement of a claim for damages for breach of contract. On the

contrary, we have held on numerous occasions that compromise settlements were valid and binding on both parties. * * * *"

It is elementary law that settlements such as the accord and satisfaction entered into here are greatly encouraged.

■ Plaintiff vehemently opposes defendant's right to raise the accord and satisfaction defense. It was filed as defendant's fourth affirmative defense almost four months after the Commissioner's Opinion and Findings of Fact. Plaintiff maintains that Rules 19(b), 20 (b) and 20(h) of the Rules of the court provide that an affirmative defense such as accord and satisfaction must be asserted in the responsive pleading or else waived forever. However, our Rule 22 provides for a liberal amendment of pleadings. We feel that the facts of this case justified allowing defendant to file its fourth affirmative defense.

We conclude as a matter of law that plaintiff is not entitled to recover, and therefore, the petition is dismissed.