**CONSTRUCTION SERVICE COMPANY**

**v.**

**The UNITED STATES.**

**No. 525–59.**

United States Court of Claims.
March 18, 1966.

Max H. Walls, Philadelphia, Pa., attorney of record, for plaintiff.

James F. Merow, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COLLINS, Judge.

In 1955, the U. S. Army Corps of Engineers awarded to plaintiff a contract for the erection of a dam at Letterkenny Ordnance Depot, Pennsylvania. Plaintiff seeks, in the present action, to recover additional compensation for the construction of the spillway bucket, a portion of the dam (described in finding 6(b)). The payments which plaintiff received for the concrete used in the spillway bucket were based upon the classification, gravity concrete ($16.25 per cubic yard). According to plaintiff, the concrete in question should have been classified as reinforced concrete ($75 per cubic yard), and plaintiff claims entitlement to the difference between the two classifications. In addition to denying plaintiff's right to recover, defendant has filed a counterclaim (which is discussed infra).

The facts relevant to plaintiff's claim can be summarized as follows: Included with the invitation for bids, which was issued in May 1955, was a unit-price schedule that contained estimates of the quantities of materials required. For gravity concrete, the estimate was 21,800 cubic yards; for reinforced concrete, 490. Although the specifications stated that measurement of (and payment for) concrete would be based upon "the actual volume of concrete within the pay lines of the structures as indicated on the drawings," the originally issued version of the pertinent drawing contained no pay lines. However, on June 7, 1955, the Corps of Engineers sent to all prospective bidders an addendum to the specifications. The addendum provided that three portions of the dam should be shown on the drawing as reinforced concrete, i. e., the spillway training walls, the bucket training walls, and the gate house above elevation 836.0. (See findings 10, 6(c), and 6(d).) Also, the following note was to be added to the drawing: "All concrete will be paid for as Gravity Concrete except spillway and bucket training walls and Gate House above Elev. 836.0 which are classed as Reinforced Concrete for payment."

In order to determine the amounts of material needed for the construction, plaintiff's personnel examined the various contract documents. Also, plaintiff had been represented at the site inspection held on May 31, 1955. With respect to the item of reinforced concrete, plaintiff's estimator computed a total of 1,415 cubic yards. This amount, which included the concrete in the spillway bucket, was used in preparing plaintiff's bid. Although recognizing the discrepancy between their estimate and that of the Government (490 cubic yards), plaintiff's personnel did not, prior to bidding, seek clarification. Plaintiff's bid was submitted to the Government on June 17, 1955, and it was the lowest one with respect to the dam and appurtenant work. On June 24, 1955, plaintiff signed its contract and then proceeded with the project.

In March 1957, when the work in question had been completed, plaintiff wrote the Corps of Engineers that the Government had erred in classifying the con-

crete in the spillway bucket as gravity concrete. After the contracting officer denied its claim for adjustment of the contract price, plaintiff appealed, without success, to the Corps of Engineers Claims and Appeals Board. Subsequently, the Armed Services Board of Contract Appeals (the "ASBCA") denied plaintiff's claim regarding the spillway bucket. Then, plaintiff filed the present suit.

Plaintiff contends that its interpretation of the contract was reasonable, in view of the nature of the contract documents and because of the conduct of certain Government representatives. We cannot accept plaintiff's argument.

■ Prior to the issuance of the addendum described above, the contract was unclear as to what portions of the dam would be classified as reinforced concrete. The drawings indicated that various parts were to contain reinforcing bars, but this was not decisive. Payment for the bars was separate from that for the concrete. (See finding 4.) The classification of the concrete was to be shown by pay lines, but, as stated previously, the original drawing failed to contain such lines. The crucial fact, however, is that this omission was cured by the addendum. The relevant section of the addendum specified the parts which were to be labeled "reinforced concrete" and provided an explanatory note. These additions to the contract made it clear that only the spillway training walls, the bucket training walls, and part of the gate house were classified as reinforced concrete. All other portions of the dam, including the spillway bucket, were to be paid for as gravity concrete.

By limiting attention to the note set forth in the addendum, plaintiff attempts to find an ambiguity. The short answer to this is that, when *all* pertinent provisions of the addendum are considered, it is clear that the spillway bucket was excluded from the category of reinforced concrete. Since the addendum erased any reasonable doubts regarding classification of the concrete in the spillway bucket, there is no basis for applying the rule that ambiguities should be construed

against the Government, the preparer of the contract documents. Thus, the principle stated in WPC Enterprises, Inc. v. United States, 323 F.2d 874, 163 Ct.Cl. 1, 6 (1963), is of no avail to plaintiff. Contrary to plaintiff's assertion, our decision in C. J. Montag & Sons, Inc. v. United States, 172 Ct.Cl. ——, ——, 348 F.2d 954 (July 1965), is not controlling. The contractual provision which was the subject of the dispute in C. J. Montag & Sons, Inc., was susceptible to two different, but reasonable, interpretations. With regard to the present case and the matter of the spillway bucket, the facts are quite different. The contract, as amended, is such that plaintiff's interpretation is not a reasonable one.

■ There is an additional ground for denying plaintiff's claim. The personnel of plaintiff were aware of the substantial discrepancy between their estimate of the amount of reinforced concrete and the estimate of the Government. Bidders were instructed that requests for explanation of drawings and specifications should be submitted, in writing, prior to bidding. Nonetheless, plaintiff made no effort to comply with this provision. Under these circumstances, defendant is quite correct in relying upon this court's decision in Beacon Constr. Co. v. United States, 161 Ct.Cl. 1, 314 F.2d 501 (1963). There, we discussed a contractual provision which stated:

> * * * "In any case of discrepancy in the figures, drawings, or specifications, the matter shall be immediately submitted to the contracting officer, without whose decision said discrepancy shall not be adjusted by the contractor, save only at his own risk and expense." * * * [314 F.2d at 504, 161 Ct.Cl. at 6.]

We held that, under such a provision, the bidder was required, when presented with an obvious discrepancy of significance, to "consult the Government's representatives if he [the bidder] intends to bridge the crevasse in his own favor. Having failed to take that route, plaintiff is now barred from recovering on this demand." 161 Ct.Cl. at 7, 314 F.2d at 504.

The same rule applies to the present case, and the same result must follow.[1] Plaintiff had ample opportunity, before bidding, to seek written clarification, and it should have done so.

■ Our decision is consistent with that of the ASBCA. There is, however, no need to discuss the question of finality of the ASBCA determination, for defendant acknowledges that the dispute regarding the spillway bucket is essentially a problem of contract interpretation, and defendant has not urged that the administrative decision is entitled to finality.[2] Defendant has raised several other reasons for denying plaintiff's claim, but, in view of the conclusion we have reached, it is unnecessary to discuss them.

### The Counterclaim

The claim which plaintiff presented to the contracting officer was not limited to the matter of the spillway bucket. In addition, plaintiff sought further compensation for concrete used in certain areas which, according to plaintiff, were included in the "training walls." With respect to this latter claim, plaintiff succeeded in obtaining relief from the Corps of Engineers. Defendant asserts that the making of the additional payment was erroneous.

The pertinent facts are as follows: On March 21, 1957, plaintiff wrote the contracting officer that it considered the "training walls for entire depth of reinforcing" to be one of the areas which should be paid for as reinforced concrete. The contracting officer rejected plaintiff's view as to the extent of the "training walls." His decision, issued on July 12, 1957, included the following: " * * * training walls mean that concrete which projects beyond the face of the spillway and bucket structures and not any of the concrete which is within and part of the respective structures." After the denial of its appeal by the Corps of Engineers Claims and Appeals Board, plaintiff sought review by the ASBCA.

In a decision dated February 12, 1959, the ASBCA held that plaintiff's interpretation of the meaning of "training walls" was reasonable and that recovery was in order. Subsequently a dispute arose between plaintiff and the Corps of Engineers as to the amount of recovery. Plaintiff claimed a sum based upon 120.8 cubic yards. When the contracting officer decided that the disputed area consisted of 39.9 cubic yards, plaintiff filed an appeal. The Corps of Engineers transmitted the appeal to the ASBCA which held (1) that its prior decision had not dealt with the issue of quantum and (2) that the matter should be determined initially by the Corps of Engineers. Then, in October 1960, plaintiff's appeal was referred to the North Atlantic Division of the Corps of Engineers. On January 17, 1961, the division engineer rendered a decision, the effect of which was to compensate plaintiff on the basis of 79.9 cubic yards. (See finding 33.) Plaintiff was paid an additional $4,694.12, and this is the amount defendant seeks to recover.

Basically, the position of defendant is that the payment in question resulted from erroneous interpretation of the contract by the ASBCA and the division engineer. Defendant asserts that no part of the disputed areas could properly be considered as "training walls" and that, therefore, plaintiff was not entitled to any additional payment at the reinforced-concrete rate. Defendant relies, in part,

1. In addition to the above-mentioned provision of the instructions to bidders, the contract in the present suit contained a clause like that relied upon in Beacon Constr. Co. v. United States, supra.

2. Defendant does assert that, despite the introduction (by both parties) of de novo evidence, judicial review should have been limited to the administrative record. De-

fendant relies upon United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963). We must reject defendant's contention for the doctrine of waiver is applicable. Cf. Stein Bros. Mfg. Co. v. United States, 337 F.2d 861, 162 Ct.Cl. 802, 807 (1963); WPC Enterprises, Inc. v. United States, supra, 323 F.2d 874, 163 Ct.Cl. 1 at 8.

upon Flippin Materials Co. v. United States, 312 F.2d 408, 160 Ct.Cl. 357, 371 (1963).

We are unable to accept defendant's argument, for we are of the opinion that plaintiff is correct in asserting that the decision of the division engineer was the result of a valid compromise.[3] Thus, the present case is distinguishable from *Flippin Materials Co.*, supra, which involved not a mutual agreement, but a unilateral decision on the part of a contract appeals board.[4] In *Flippin Materials Co.*, the Government was permitted to recover from the contractor a payment which had been based upon an erroneous decision of the board. In the present case, however, we are unwilling to invalidate the settlement reached by plaintiff and the division engineer.

Defendant differentiates between the "training wall aspects" and the "wing wall aspects" of the payment to plaintiff, but we are not willing to view the payment to plaintiff in the manner defendant proposes. The amount of concrete, regarding which plaintiff sought additional compensation, was 120.8 cubic yards. In part, plaintiff's claim rested upon the assertion that the wing walls were part of the training walls. Under our view of the facts, the correctness or incorrectness of plaintiff's interpretation of "training walls" is not decisive. It is sufficient that plaintiff's claim was made in good faith and was based upon a reasonably tenable ground. Cf. Wm. A. Smith Contr. Co. v. West Central Texas Municipal Water Dist., 344 F.2d 470 (5th Cir. 1965). There has been no suggestion that plaintiff was acting in bad faith, and the reasonableness of plaintiff's claim is indicated by the decisions reached by the ASBCA and the division engineer. We conclude, therefore, that the giving up of plaintiff's disputed claim constituted good consideration and that it would be improper to permit defendant to upset, to any extent, the settlement which plaintiff made. Cf. Goltra v. United States, 96 F.Supp. 618, 119 Ct.Cl. 217, 255 (1951). Also cf. Brock & Blevins Co. v. United States, supra, 343 F.2d 951, 170 Ct.Cl. at 58.

Another argument of defendant is that the Corps of Engineers lacked authority to enter into a compromise. Defendant states that, after plaintiff filed the present suit (in 1959), only the Department of Justice had authority to effect a compromise. The primary basis for this argument is Executive Order No. 6166 (June 10, 1933), which provides in part:

As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, * * * now exercised by any agency or officer, is transferred to the Department of Justice.

The difficulty with defendant's contention is that it attributes too broad a meaning to the phrase "case referred to the Department of Justice." The suit which plaintiff commenced in 1959 related only to plaintiff's spillway-bucket claim. Plaintiff did not include its training-wall claim, since that matter was still pending in administrative channels. It follows, therefore, that the dispute regarding the training walls was not part of the "case referred to the Department of Justice" in 1959. Until its resolution by the compromise, the training-wall dispute continued to be the responsibility of the Corps of Engineers. Our view is not altered by the fact that, in Novem-

3. With regard to the power of a contracting officer to enter into settlements, plaintiff cites Cannon Constr. Co. v. United States, 319 F.2d 173, 162 Ct.Cl. 94, 103 (1963). See also Brock & Blevins Co. v. United States, 343 F.2d 951, 170 Ct.Cl. 52, 59 (1965).

4. Also distinguishable on grounds similar to that mentioned above are International Harvester Co. v. United States, 342 F.2d 432, 169 Ct.Cl. 821, 839 (1965), and C. J. Langenfelder & Son, Inc. v. United States, 169 Ct.Cl. 465, 341 F.2d 600 (1965). In the latter case, the court emphasized that it was dealing with administrative decisions under the disputes clause, not with compromises or settlements. 341 F.2d 600, 169 Ct.Cl. at 479, footnote 10.

ber 1960, the Department of Justice informed plaintiff that, depending upon the outcome of the administrative proceedings, it might file a counterclaim. We hold that the settlement reached in January 1961 was properly authorized and that it is binding upon defendant.

In conclusion, we have determined that both the claim of plaintiff and the counterclaim of defendant must be denied.