**WINDER AIRCRAFT CORPORATION OF FLORIDA** and the Seminole Bank of Tampa, Tampa, Florida

v.

The **UNITED STATES.**

Nos. 317–62, 318–62.

United States Court of Claims.

July 16, 1969.

Monterey Campbell, Bartow, Fla., attorney of record, for plaintiffs. Tamasello, Campbell, Dunlap & Norris, Bartow, Fla., of counsel.

James A. Pemberton, Jr., Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner William E. Day with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on August 8, 1968. Plaintiffs have filed exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the opinion, findings and recommended conclusion of law of the commissioner, with a slight modification, it hereby adopts the same, as modified, as the basis for its judgment in this case as hereinafter set forth. Therefore, neither plaintiff is entitled to recover and the petitions in both cases are dismissed. Defendant is entitled to recover from the plaintiff, Winder Aircraft Corporation of Florida in case No. 317–62 on defendant's counterclaim in the amount of $3,525.82 and judgment is entered for defendant accordingly.

## OPINION OF COMMISSIONER

DAY, Commissioner:

These two cases (No. 317–62, a suit on a Navy contract and No. 318–62, a suit on an Army contract) were tried in one proceeding. While not formally consolidated for trial, as a practical matter they will be regarded as having been so consolidated, since they were tried together.

At pretrial proceedings (before the late trial commissioner Robert K. McConnaughey) the defendant urged its objection to the receipt of *de novo* evidence, relying on the case of United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S. Ct. 1409, 10 L.Ed.2d 652 (1963). Commissioner McConnaughey, in effect, overruled the defendant's objection and scheduled the case for trial shortly before he died. The cases were scheduled for trial in Florida and in Washington, D.C., when they were reassigned to the writer of this opinion and report. Trial sessions were conducted for two days at Tampa, Florida, one day at Jacksonville, Florida and two days at Washington, D.C.

There is no question that Winder Aircraft Corporation of Florida sustained large losses on both contracts. During performance, Winder assigned the contract proceeds to The Seminole Bank of Tampa, Tampa, Florida. That bank was paid the full contract price on the Army contract and the full price to which Winder was entitled to the extent it performed the Navy contract. There is a counterclaim filed by the defendant as to case No. 317–62. For reasons which follow, and on the basis of the findings of fact, including ultimate findings, it is recommended that the plaintiffs' petitions be dismissed and that the defendant have judgment on its counterclaim in case No. 317–62.

## CASE NO. 317–62

By the plaintiffs' petition in No. 317–62 (involving the Navy contract) Winder claims damages of upwards of $50,000, which it attributes to work stoppages by the defendant's inspector, inadequacies in the drawings (which necessitated extra work) and also a claim that Winder had made a mistake in its bid which was so great as to put the Navy on notice of such mistake, and which resulted in the unjust enrichment of the defendant.

**1272**

■ As the findings of fact show, the plaintiffs did not quarrel with any contracting officer's decision and therefore filed no appeal from such decision under the Disputes clause of the contract. Plaintiffs having therefore failed to exhaust the administrative remedies as to the claim involving inadequacies in the drawings, that claim will not be further considered by this court. Justice White said in United States v. Utah Constr. & Mining Co.:

> * * * With respect to relief available under the contract, therefore, the contractor must exhaust his administrative remedies and the findings and determination of the Board would be subject to review under the Wunderlich Act standards, * * *. 384 U.S. 394, 402, 86 S.Ct. 1545, 1550, 16 L.Ed. 2d 642 (1966)

■ Winder did file a claim under Public Law 85–804, approved August 28, 1958 (72 Stat. 972) [1] and that claim was denied by the Chief Signal Officer on September 2, 1959. The petition does not attack such denial, but even if it did, this would not help the plaintiff since the action by the responsible government official on such a claim is entirely discretionary, since an allowance of such a claim required a finding by the official considering it that "such action would 'facilitate the national defense' " under the Act referred to above. See Bolinders Company, Inc. v. United States, 153 F. Supp. 381, 139 Ct.Cl. 677 (1957), cert. denied, 355 U.S. 953, 78 S.Ct. 538, 2 L.Ed. 2d 530 (1958).

Winder thereafter filed a claim with the Comptroller General which was also denied.

■■ As to the claims in the petition that Winder was damaged by work stoppages imposed by Navy inspectors, the findings show that the plaintiff was not stopped or hindered in its production except that its responsible officers were advised that the Navy would not accept production items which did not conform to the contract specifications. Although such warnings caused Winder to stop work at times, seeking waivers of the specification requirements, they can by no stretch of the imagination be regarded as impairments of Winder's performance by the defendant.

■ The findings further show that the inspection procedures of the Navy did not unreasonably delay Winder's performance of the contract work. The plaintiffs, therefore, cannot recover on this item of claim.

■ With regard to the plaintiff's claim as to a mistake (amounting to a mutual mistake) in its bid, it is clear that when the bid was received, the defendant's procurement officers both telephoned and telegraphed Winder to double check its figures. This action was taken because the bid was considerably lower than other bids. Winder's vice president, both orally and in writing, confirmed that Winder had checked its bid again and confirmed that it would stand behind the bid as submitted and deliver the contract items at the bid price. Even if Winder did make a mistake, this evidence would very clearly place such mistake in the category of a unilateral mistake at best. As the findings show, however, the proof as to any mistake is not convincing. Winder produced no original work papers. The only testimony about the mistake was from Winder's president, who testified generally that the mistake was due to the misplacing of a decimal point as it applied to the hours of labor. This claim falls with a failure of proof.

Since The Seminole Bank of Tampa has been paid (as assignee of the contract proceeds) all sums to which Winder would have been entitled absent the assignment, the United States is not liable to pay any additional sums to that bank.

### DEFENDANT'S COUNTERCLAIM IN CASE NO. 317–62

■ The defendant returned 25 defective quadpak cradles to Winder's plant

1. 50 U.S.C.A. §§ 1431–1435.

to be reworked by the plaintiff. It was shown that of that number, 2 units were not of Winder's manufacture. The plaintiff, instead of reworking the cradles, asked that it be given a further contract for replacement cradles. The defendant, being unable to obtain the co-operation of the plaintiff in reworking the cradles, secured the needed cradles under a separate procurement. The defendant is entitled to recover on its counterclaim the amount of $3,525.82 as shown in finding 23.

## CASE NO. 318–62

This is a suit on a contract for furnishing by Winder to the Army Signal Corps, of 146 rectifiers and related spare parts for a total contract price of $27,396.90 for the rectifiers and $2,716.75 for the spare parts. Contract modifications were issued and accepted, which increased the contract price to $38,343.69, and which extended the delivery time by more than two years. During performance, the contract proceeds were assigned to The Seminole Bank of Tampa, Tampa, Florida. The contract performance was completed by Winder Aircraft Corporation of Florida, except for a quantity of spare parts, of the value of $2,546.01. The entire contract price, less the latter amount, has been paid to the bank as assignee.

By the petition, Winder and the bank, as assignee, claim the sum of $68,131.03 on account of losses sustained by Winder by the following allegations:

1. That Winder was put to extra work necessitated by the requirement that it redesign, redevelop and re-engineer the rectifiers due to alleged defects in the drawings.

2. That Winder had been led to believe that component parts for the contract would be approved if acquired from a list of allegedly approved manufacturers furnished by the defendant.

3. That Winder was unreasonably delayed in obtaining component approvals.

As to the claim on account of extra work involved in the re-design of the rectifiers, the findings (particularly finding 37) show that this claim is almost frivolous in nature. In any event, there was a failure to exhaust administrative remedies, since no claim was made the subject of an appeal from a contracting officer's decision. United States v. Utah Constr. & Mining Co., *supra*. Further, the extra work involved was the subject of change orders accepted by Winder. This would constitute an accord and satisfaction under the circumstances of this case. Cannon Constr. Co. v. United States, 319 F.2d 173, 162 Ct.Cl. 94 (1963); Brock & Blevins Co. v. United States, 343 F.2d 951, 170 Ct.Cl. 52 (1965).

By the findings (particularly finding 46) it has been found that Winder was not unreasonably delayed in its performance of the contract. This disposes of the claim by Winder that it had been delayed in securing component approvals. Winder is not entitled to recover on the delay claim.

Since Winder is not entitled to recover on the claims asserted by it, The Seminole Bank of Tampa, as assignee, is likewise precluded from any recovery. As shown by the findings (see finding 43 *) the bank has been paid in full for all contract items delivered. It is entitled to no more.

* 43. On March 18, 1958, the contracting officer notified The Seminole Bank of Tampa (Winder's assignee pursuant to the Assignment of Claims Act of 1940) that all undelivered items on the contract in suit must be delivered by April 1, 1958, and that a failure to so deliver would result in a termination of the contract for default. The remaining rectifiers were delivered by the time indicated. Invoices were submitted and the defendant paid the assignor in full for all contract items delivered. Although Winder did not complete the shipments of spare parts, having a contract value of $2,546.01, the bank was advised that such would not be reprocured and charged back against the bank.