**KUEHNE & NAGEL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 738–86C.

United States Claims Court.

May 12, 1989.

James A. Geraghty, New York City, attorney of record, for plaintiff.

A. David Lafer, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

### REGINALD W. GIBSON, Judge:

*Introduction*

This case comes before the court on plaintiff's motion and defendant's cross-motion for summary judgment. Plaintiff, Kuehne & Nagel, Inc. (hereinafter Kuehne), attempted to export a shipment of spare parts for a troop carrier to the Netherlands. The United States Customs Service in Newark, New Jersey, seized the entire shipment for failure to present a validated export license.

Shortly thereafter, the shipment was released to plaintiff in exchange for a $17,805 letter of credit to defendant. A penalty of $17,805 was ultimately assessed against plaintiff for its failure to *timely* present its export license.

Plaintiff, having exhausted its administrative remedies, filed a complaint in this court on November 24, 1986, seeking to recover the $17,805 it paid as a penalty. The basis of plaintiff's claim is that defendant breached an accord and satisfaction or, in the alternative, breached an implied obligation of good faith contained in a contract formed by its posting the letter of credit to defendant.

The court finds that because the government cannot be bound by its agents acting outside the scope of their authority, no accord and satisfaction was ever established. Further, while plaintiff's contention that the letter of credit provided to defendant constituted a contract is meritorious, the terms thereof do not encompass plaintiff's claim for relief.

Therefore, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

*Facts*

Kuehne, a freight forwarder, was hired by Relli Technology, Inc. (Relli) to facilitate the exportation of a shipment of spare parts for use on a troop carrier. The Department of State had issued a validated license for export of unclassified articles and related and classified technical data on October 3, 1983. Such license was valid for two years thereafter (Pltf's Ex. A).

Kuehne attempted to export the shipment of spare parts on October 31, 1984, but did not at that time present the export license to the United States Customs Service at Newark, New Jersey (Customs Service or Customs), along with the Shipper's Export Declaration (SED) (Pltf's Ex. B). As a result, the Customs Service seized the shipment, citing 22 U.S.C. § 401,[1] which authorizes the Customs Service to seize articles that are being exported "in violation of the law." In order to secure the release of the shipment, Customs required Kuehne to post an irrevocable letter of credit in favor of the Customs Service for the amount of $17,805, an amount representing 15% of the value of the shipment

---

1. 22 U.S.C. § 401 states in pertinent part as follows:

(a) Whenever an attempt is made to export ... out of the United States any ... articles in violation of law, ... the Secretary of the Trea-sury, or any person duly authorized for the purpose by the President, may seize and detain such ... articles.... All ... articles ... seized pursuant to this subsection shall be forfeited.

(Pltf's Ex. E). After the shipment had been released on November 14, 1984, the export license was subsequently filed with the Customs Service.

Customs then issued a formal claim for the forfeiture value of the shipment ($118,700) on November 19, 1984 (Pltf's Ex. D). Shortly thereafter, on December 14, 1984, Kuehne and Relli filed petitions for mitigation or remission of the claim, asserting "inadvertence." Customs Headquarters responded to the petition by a letter dated April 18, 1985 (Pltf's Ex. E). According to Customs Headquarters, a violation of 22 U.S.C. § 401 had occurred as a result of ordinary negligence, and such negligence was imputed to Relli, constituting its third offense with respect to the export control laws. Customs Headquarters did, however, offer to remit the forfeiture claim to an amount equal to 15% of the value of the shipment ($17,805), the amount that Kuehne had posted by its letter of credit (Pltf's Ex. C).

Kuehne next submitted a supplemental petition on July 26, 1985, requesting once more that the penalty be remitted or mitigated. Customs Headquarters denied this petition on August 18, 1985. According to Kuehne, and undisputed by the government, Customs revised its penalty guidelines pertaining to technical violations, such as that in question herein, on the following day. Under the new guidelines, the maximum penalty to be imposed upon an exporter for a *technical* violation is $1,000 for a first offense and $3,000 for a third offense (Pltf's Ex. G).

Having learned of the new guidelines, Kuehne submitted a second supplemental petition on June 5, 1986, requesting that Customs Headquarters compromise the penalty assessed against Kuehne (Pltf's Ex. I). Attached to this petition was a check for $1,000, purportedly tendered as an offer in compromise of the claim under 19 U.S.C. § 1617 (Pltf's Ex. J). A claims examiner at the Newark Customs office deposited this check into a Department of Treasury Customs Service account on or about June 17, 1986. Nevertheless, by letter dated September 4, 1986, Customs rejected Kuehne's offer in compromise and denied the second supplemental petition (Pltf's Ex. M). Customs later issued a draft for $17,805 against Kuehne's letter of credit. Said check was honored by the issuer bank on October 6, 1986.

Kuehne, thereafter, filed the present action against the United States on November 24, 1986. Customs subsequently sent Kuehne a check, dated December 18, 1986, for $1,000. Kuehne has yet to cash said check or return it to the government. Instead, Kuehne deposited the check with this court pending the outcome of its action.

On May 5, 1987, Kuehne filed a motion for summary judgment. The United States has, in turn, filed a cross-motion.

*Contentions of the Parties*

Plaintiff

In its complaint, Kuehne alleges two causes of action: (1) that by depositing the $1,000 check accompanying the second supplemental petition, the government established an accord and satisfaction which extinguished the government's claim against Kuehne, and that by drawing against the $17,805 letter of credit Customs breached "the implied contract of accord and satisfaction"; and (2) that Customs failed to follow the procedures for release of seized merchandise set out in its own regulations; that Customs was without legal authority to require Kuehne to post a letter of credit to secure release of the seized shipment; and that the only lawful method Customs could have utilized to secure its claim was to institute judicial proceedings against Kuehne or Relli. Plaintiff seeks $17,805 plus interest and attorney fees.

The arguments set forth in Kuehne's motion for summary judgment are a sketchy image of those contained in its original complaint. Under the first cause of action, Kuehne presents the court with two issues: (i) whether Customs established an accord and satisfaction by cashing the $1,000 check; and (ii) whether Customs breached "its implied agreement to draw against the letter of credit in good faith," as allegedly required by "the New York version of the

Uniform Commercial Code." This latter argument concerning an implied obligation arising from the letter of credit appears for the first time in Kuehne's motion for summary judgment.

Kuehne also presents the court with an issue arising under the second cause of action: whether Customs' demand for and its drawing against the letter of credit was authorized by law. In addition, Kuehne, for the first time in its pleadings, introduces "restitution" as its theory of recovery.

■ In its opposition to defendant's cross-motion, however, Kuehne concedes that Customs was indeed authorized by law to demand a letter of credit in exchange for release of the goods. Having expressly abandoned the second cause of action in its complaint, Kuehne then goes on to accuse the government of failing to follow its procedures for a forfeiture of property, seeming to suggest that its due process rights were violated. Counsel for the plaintiff is mystifyingly vague in this regard, stating no grounds for relief based upon this accusation.[2]

In response to arguments raised by the government, *infra,* Kuehne argues that this court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, in that the letter of credit posted by Kuehne constituted an *express* contract between the parties, containing certain *implied terms, i.e.,* a good faith obligation. Lastly, responding to Customs' assertion that mitigation decisions by the Secretary of the Treasury are not reviewable, Kuehne contends that such deference only applies to cases that have been settled voluntarily, not where, as here, plaintiff has refused to pay the mitigated amount.

Defendant

Customs' initial argument is that the agent who cashed the $1,000 check tendered by Kuehne lacked authority to compromise claims on behalf of the United States. Therefore, concludes defendant, no accord and satisfaction of Customs' claim

resulted, and Kuehne is not entitled to restitution.

Customs next challenges the jurisdiction of this court. Its first argument in this regard is that no contract existed between Kuehne and Customs, and that Kuehne, therefore, may not maintain an action under the Tucker Act, 28 U.S.C. § 1491. Even if a contract were created by Kuehne's posting the letter of credit, it argues, such contract only obligated Customs to secure the early release of the shipment—which it did. Further, adds defendant, Kuehne is essentially seeking a review of the Secretary of the Treasury's mitigation decision, which is not subject to judicial review. It is, therefore, the defendant's position that the court should dismiss Kuehne's complaint.

*Issues*

In ruling on the parties' cross-motions, the court must first decide—whether the Customs agent who cashed the $1,000 check tendered by Kuehne had authority to bind the United States to a contract and effect an accord and satisfaction of Customs' claim against Kuehne. Turning to Kuehne's *alternative* arguments, the court must next determine—(i) whether Kuehne ever had a contract, express or implied, upon which it can base its claims for breach of good faith; (ii) the scope of any such contract and whether it has been breached by Customs, *i.e.,* was Customs obligated to use the "revised" mitigation penalty guidelines; and, (iii) whether mitigation decisions by the Secretary of the Treasury are, in any event, subject to review by this court.

*Discussion*

A. Introduction

The parties in this action have both moved for summary judgment under RUSCC 56(c). The moving party under such rule carries the burden of showing by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... that there is no genuine

---

**2.** This accusation by plaintiff need not be considered by the court, for novel contentions raised for the first time in a reply brief do not afford the opposing party a fair opportunity to

respond. *See Asociacion de Compositores v. Copyright Royalty Tribunal,* 809 F.2d 926, 928 (D.C.Cir.1987), and authorities cited therein.

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RUSCC 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Barmag Barmer Maschinenfabrik AG v. Murata Machinery Ltd.,* 731 F.2d 831 (Fed.Cir.1984). In the case at bar, the material facts are not in dispute, particularly where, as here, the parties have executed a Stipulation of Material Facts. Against this background, the court first examines Kuehne's primary argument regarding accord and satisfaction.

Because a party contracting with the United States carries the threshold burden of verifying the contractual authority of the agent with whom it deals, and generally has no cause of action against the government if the agent is not authorized to enter into such contracts on behalf of the government, *see Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), we focus on the authority, if any, of the government employee to cash Kuehne's $1,000 check. Finding that, by statute, only the Commissioner of Customs or his lawful delegate may accept such offers in compromise, and that the agent here in question was not delegated such authority, we hold, *infra,* that no accord and satisfaction was established.

We next consider, *infra,* the question of whether the letter of credit established a contract between the parties, and hold that although, technically, it in fact did, the scope of such contract does not extend to an obligation of good faith in assessing or mitigating penalties. Examining Kuehne's breach of good faith argument, we find—(i) it is without merit; and (ii) that Kuehne has not shown that the "guidelines," which it claims to represent "established administrative practices," are regulations and were in effect at the time of the original mitigation decision or the denial of either supplemental decision.

Lastly, the court discusses the mitigation decisions by the Secretary of the Treasury, or his delegate, and holds that they are not subject to judicial review.

### B. Accord and Satisfaction

■ An accord and satisfaction is a *separate* and new contract that operates to discharge or terminate an existing contract. "Discharge by an accord and satisfaction means a discharge by the *rendering* of some performance different from that which was claimed as due and the *acceptance* of such substituted performance by the claimant as full satisfaction of his claim." (emphasis added). *Brock & Blevins Co., Inc. v. United States,* 170 Ct.Cl. 52, 58, 343 F.2d 951, 955 (1965). As such, the traditional elements of a contract, *i.e.,* proper intent to contract, meeting of the minds, competent parties, and consideration, *must* be met in order to establish an efficacious accord and satisfaction. *See Chesapeake & Potomac Telephone Co. v. United States,* 228 Ct.Cl. 101, 108–09, 654 F.2d 711, 716 (1981). There must also have been a bona fide dispute between the parties of an existing claim involving the identical subject matter. *See Brock & Blevins,* 170 Ct.Cl. at 59, 343 F.2d at 955.

■ Moreover, within the context of a government contract, it is important to note that parties entering into contracts with the government bear the risk of having accurately ascertained that the agent with whom said party deals is within the bounds of his authority. *See Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Neither the government nor the party with whom it deals will be bound by a contract executed by a government agent acting outside the bounds of his authority. *See New England Tank Industries of New Hampshire, Inc. v. United States,* 861 F.2d 685, 695 (Fed.Cir.1988).

■ In the case at bar, the parties are in dispute only as to whether, as a matter of law, the Customs agent who deposited the check had authority to compromise a claim in such a manner. We hold that said agent lacked the necessary authority, and that,

therefore, no accord and satisfaction was ever reached.

Kuehne's argument in this regard is that the District Director of Customs (District Director) has authority under 19 C.F.R. § 171.21 [3] to mitigate any claim that does not exceed $100,000, and that, as the value of the seized merchandise was substituted for the $17,805 letter of credit, the District Director had authority to compromise Customs' claim against Kuehne. This argument, however, confuses the District Director's authority to mitigate a claim under 19 U.S.C. § 1618, with its authority to compromise a claim under 19 U.S.C. § 1617.[4] Section 1618 is entitled "Remission or mitigation of penalties" and refers, *inter alia,* to 19 C.F.R. § 171 *et seq.*, which provides that the District Director has authority to act on petitions if the claim is for $100,000 or less. Section 1617, on the other hand, governs the "Compromise of Government Claims by Secretary of Treasury," and the general enforcement powers under this section are contained in 19 C.F.R. § 161 *et seq.* There is a distinction between the "mitigation" of a claim and the "compromise" of a claim in that the latter refers to a *settlement* of a penalty or an amount that Customs is not certain to collect, whereas the former refers to a *reduction* of a *certain amount* of penalty. That is to say, a compromise of a claim will be reached in instances such as where a party's ability to meet its penalty is suspect or where Custom's ability to establish liability by a valid judgment is not certain. On the other hand, a penalty of a sum certain will be mitigated where the Secretary of the Treasury finds, for one or more reasons set out in § 1618, that the award is too harsh or unjust given a particular set of facts. *Compare* 19 U.S.C. § 1617 *with* 19 U.S.C.

§ 1618; 21 Op.Att'y Gen. 264 (1925); 30 Op.Att'y Gen. 98 (1934); *United States v. One 1973 Dodge Maxivan Truck,* 365 F.Supp. 833 (N.D.Fla.1973).

This distinction is made clear by the language contained in the two statutes themselves. Section 1617 provides that the Secretary of the Treasury is "authorized to compromise" a claim "[u]pon a report by a customs officer ... showing ... *the probabilities of a recovery....*" 19 U.S.C. § 1617 (emphasis added). Section 1618, however, states that the Secretary of the Treasury or the Secretary of Commerce may remit or mitigate a fine, penalty, or forfeiture on behalf of:

> [a]ny person interested in any vessel, vehicle, aircraft, merchandise, or baggage *seized* under the provisions of this Chapter, or who *has incurred,* or is alleged to have incurred, any fine or penalty thereunder [upon the filing of a petition]....

19 U.S.C. § 1618 (emphasis added).

The court also notes that Kuehne's second supplemental petition filed on June 5, 1986, which contained the $1,000 check, provided as follows: "This tender is being made as an offer in *compromise* pursuant to 19 U.S.C. section 1617." (Pltf's Ex. I) (emphasis added).

We are, therefore, constrained, in view of the above, to arrive at two inescapable conclusions: (i) that Kuehne's $1,000 check was an offer in compromise under 19 U.S. C. § 1617; and (ii) under § 1617, the Secretary of the Treasury or his lawful delegate is authorized to compromise any claim. In this connection, § 171.21 does not apply to offers in compromise under § 1617, but only to petitions for mitigation under § 1618, and is, therefore, of no avail to Kuehne.

---

**3.** "The district director may mitigate or remit fines, penalties, and forfeitures incurred under any law administered by Customs ... on such terms and conditions as, under the law and in view of the circumstances, he shall deem appropriate, when the total amount of fines and penalties incurred with respect to any one offense, together with the total value of any merchandise or other article subject to forfeiture or to a claim for forfeiture value, does not exceed $100,000." 19 C.F.R. § 171.21.

**4.** Section 1617 provides in pertinent parts that: "Upon a report by a customs officer ... having charge of any claim arising under the customs laws, ... the Secretary of the Treasury is authorized to compromise such claim, if such action shall be recommended by the General Counsel for the Department of the Treasury."

Given the foregoing, the court now turns to the question—whether the Customs agent who deposited the $1,000 check possessed delegated authority to do so. We find that he did not. The District Director, Max Willis, stated in an affidavit that not only did the particular Customs agent who deposited the check act without authority, but that no one in the Newark office, including himself, even had such authority. *See* Willis Affidavit, para. 19, Deft's Cross–Motion, Appendix, wherein he states:

19. The check for $1,000.00 was deposited by a claims examiner in the Fines, Penalties, and Forfeitures office. The claims examiner does not possess contracting authority to bind the Customs Service. Moreover, the employee did not confer with me regarding whether to deposit the check. Furthermore, pursuant to 19 C.F.R. § 161.5(b), all offers in compromise must be transmitted in writing to the Commissioner of Customs for his decision. Consequently, as a matter of law, no one in my office has authority to accept an offer in compromise.

Aside from the unsupported conclusory argument that under 19 C.F.R. § 171.21 the District Director has authority to compromise a claim under $100,000, Kuehne does not refute the operative facts. The court, therefore, under RUSCC 56(c), must find that the necessary authority to compromise a claim was lacking, *see* RUSCC 56(c); *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53, and that the Customs agent's act of depositing Kuehne's check did not bind the government, for the United States cannot be estopped from denying the unauthorized acts of its agents. *See Utah Power & Light Co. v. United States,* 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917); *Federal Crop Insurance v. Merrill, supra.* Absent proof of contractual authority, Kuehne cannot hold the government liable on an accord and satisfaction contract theory. *See Radioptics, Inc. v. United States,* 223 Ct.Cl. 594, 612, 621 F.2d 1113, 1123 (1980).

C. Was The Letter Of Credit A Contract?

Having held that no accord and satisfaction between Kuehne and the government was established, Kuehne is faced with having to find an alternative theory of establishing a contract in order that this court may have jurisdiction under the Tucker Act, 28 U.S.C. § 1491, over its averred claim. Kuehne's alternative position, conspicuously absent from its complaint, is that when Customs, having seized the $118,700 shipment, agreed to accept a $17,-805 letter of credit "to secure release of the cargo," an express contract was formed.

The court recognizes that in seizing merchandise under the customs laws, the United States voluntarily enters into an implied-in-fact contract of bailment with the owners of the merchandise, and that such a contract serves as a basis for this court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491. *See Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 466, 100 S.Ct. 647, 651, 62 L.Ed.2d 614 (1980). Such a contract is extremely narrow in scope, however, and applies only to Customs' duty to release the seized shipment in a properly preserved condition. *See id.* at 461, 100 S.Ct. at 648. With respect to this implied-in-fact contract formed upon Customs' seizure of the property, Customs' duties were fully performed up to and upon the release of the shipment in exchange for the letter of credit, *supra.* At this posture, the contract of bailment was fully performed with no alleged damage claims stemming solely from the *bailment.*

Kuehne argues, nevertheless, and without any legal authority whatsoever, that the letter of credit provided to Customs in exchange for the release of the merchandise also created an implied-in-fact contract, and that such contract contained an implied obligation to draw against the letter of credit *in good faith.* Borrowing the logic of *Hatzlachh Supply,* the court agrees with Kuehne that an implied-in-fact contract in bailment existed between Kuehne and Customs with respect to the $17,805 letter of credit posted in exchange for the release of the cargo. This we find because—

[a] "bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned *or duly accounted for* when the special purpose is accomplished, or kept until the bailor reclaims it.

Bailments, 8 Am.Jur.2d § 2 (1980) (footnotes omitted). Further, the court notes that money, because it is personal property, may properly be the subject of bailment. *See id.* § 4.

■ In the case at bar, Kuehne furnished the letter of credit with the understanding that Customs would hold it until Customs issued a final disposition of Kuehne's petition for mitigation. Such an exchange constituted an implied-in-fact contract of bailment over which this court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491. *See Hatzlachh Supply*, 444 U.S. at 466, 100 S.Ct. at 651. This is not to say, however, that Customs owed Kuehne an unalterable duty to *return* the letter of credit, but only that Customs owed Kuehne a duty to *account for the letter of credit,* which Customs in fact did by its letter to Kuehne informing it that the forfeiture of the seized cargo was remitted to the amount of $17,805. *See* Pltf's Ex. E. At that point, the contract of bailment was fully executed, and Customs owed no further duty to Kuehne thereunder.

### D. Breach of Good Faith

Kuehne does not contend that the alleged implied-in-fact contract created by the receipt of the letter of credit contained *express* terms that were breached. Rather, Kuehne claims that an implied obligation of good faith, based upon § 1–203 of "New York's version of the Uniform Commercial Code," [5] was breached in that Customs' demand of $17,805 for the release of the

cargo was excessive. This argument is a mere pretext of Kuehne's actual claim, *i.e.,* Customs acted too harshly and this court should, therefore, review Customs' discretion.

■ Specifically, Kuehne's claim is that Customs should have mitigated the $17,805 penalty under "revised guidelines" which, according to Kuehne, went into effect on August 19, 1985, the day after Customs denied Kuehne's supplemental petition. The "Customs Guidelines" to which Kuehne refers is an internal document of Customs officially entitled *Fines, Penalties & Forfeitures Handbook* (Handbook), and is provided to all Customs Service personnel involved in the Department's enforcement efforts by the Office of Commercial Operations. The title page of the Handbook indicates that the revisions relied upon by Kuehne were actually promulgated in April 1986 rather than on August 19, 1985, as Kuehne contends, and were not in effect until nearly eight months after Customs denied Kuehne's second supplemental petition. The issue as to precisely when the guidelines went into effect need not be resolved herein, for it is undisputed that the revised guidelines had *not* been promulgated prior to the denial of Kuehne's supplemental petition. The court, therefore, finds Kuehne's argument that Customs deviated from its *established* rules or guidelines wholly untenable in light of the fact that, as Kuehne itself concedes, the revisions were not in effect until after Customs, on April 18, 1985, offered to remit the forfeiture claim against Kuehne to an amount equal to 15% of the value of the merchandise. It is one thing to argue that an agency should not deviate substantially from its own practices, *see, e.g., Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Whelan v. United States,* 208 Ct.Cl. 688, 694, 529 F.2d 1000, 1003 (1976); it is quite another to argue that any such practice, upon promul-

---

**5.** Of course, neither New York law nor the Uniform Commercial Code applies to this case, for federal common law governs the rights of the United States, *see United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *Marine Midland*

*Bank v. United States,* 231 Ct.Cl. 496, 687 F.2d 395 (1982); *McDonald v. United States,* 13 Cl.Ct. 255, 260 (1987), and the UCC only applies to cases involving *sales* of goods, not bailments. *See* UCC § 1–202.

gation, *ipso facto* applies retroactively to any unexhausted claim.

Perhaps Kuehne's argument that Customs' alleged deviation from its established practices amounted to bad faith is best understood as a blind-side attack on the Secretary's decision to mitigate Kuehne's penalty to an amount with respect to which Kuehne is dissatisfied. The court has little trouble accepting the government's position that mitigation decisions made by the Secretary under 19 U.S. C. § 1618 are not subject to judicial review.

> [T]o the extent that the petitioner seeks herein a "review" of some action of the Secretary or contemplates some similar action in the future, the great weight of authority in cases construing § 1618 of Title 19, U.S.C.A. is to the effect that actions by the Secretary of the Treasury are not reviewable.

*United States v. One 1973 Dodge Maxivan Truck,* 365 F.Supp. at 835 (citing *United States v. One 1970 Buick Riviera,* 463 F.2d 1168, 1170 (5th Cir.1972)).

Actions taken by the Secretary under § 1618 are purely a matter of discretionary grace. As the United States Court of Appeals for the Sixth Circuit has stated:

> The purpose of the remission statutes was to grant executive power to relieve against the harshness of forfeitures. The exercise of the power, however, was committed to the discretion of the executive so that he could temper justice with mercy or leniency. Remitting the forfeiture, however, constituted an act of grace....

*United States v. One 1961 Cadillac,* 337 F.2d 730, 733 (6th Cir.1964). The court will, therefore, not allow Kuehne to pursue his bad faith argument to facilitate it to back up a street that it cannot walk up.

*Conclusion*

Because the government agent who deposited Kuehne's check did not possess the authority to contract on behalf of the United States, Kuehne's claim of accord and satisfaction must be rejected. Also, because the Secretary's § 1618 actions are not judicially reviewable, Kuehne's bad faith claim must also fail. Moreover, Kuehne has failed to show one scintilla of bad faith on the part of the Customs Service in the mitigation of Kuehne's penalty.

For the foregoing reasons, Kuehne's motion for summary judgment is DENIED, and the United States' cross-motion for summary judgment is GRANTED. The Clerk shall enter judgment dismissing plaintiff's petition. Costs to the defendant.

IT IS SO ORDERED.