**BAUM'S DAIRY FARMS, INC.,**
**Floyd J. Baum and Janice**
**L. Baum, Plaintiffs,**

v.

**UNITED STATES of America, and**
**United States Department of**
**Agriculture, Defendants.**

**Civil Action No. 97–40052.**

United States District Court,
E.D. Michigan,
Southern Division.

March 27, 1998.

---

David J. Haywood, D. Haywood & Assoc, Lansing, MI, for Baum's Dairy Farms, Incorporated, Floyd J. Baum, Janice L. Baum.

Francis L. Zebot, Daniel R. Hurley, U.S. Atty.'s Office, Detroit, MI, for United States of America, Department of Agriculture.

### *MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Before the court are cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, this court will grant defendants' motion and deny plaintiffs' motion.

**Factual Background**

Plaintiff, Baum's Dairy Farms, Inc. ("Baum's"), borrowed a substantial amount of money over a period of years from the United States government under programs administered by the Farmers Home Administration ("FHA"), an agency of the United States Department of Agriculture. The repayment of these loans was guaranteed indi-

vidually by a number of officers and shareholders of Baum's, including plaintiffs Floyd and Janice Baum. Also, Baum's granted a mortgage on a piece of property it was purchasing, and Baum's assigned its equitable interest to the government as collateral for its indebtedness.

In the late 1980's, Baum's encountered substantial financial difficulties, and as a result, plaintiffs were unable to make payments on their outstanding indebtedness. In early 1991, Baum's sold a large majority of its farmland and all of its farming equipment in an effort to raise money to pay back the loans. Now without a source of further income, Baum's was unable to make any additional payments on its indebtedness, and further was unable to make additional mortgage payments on the property it was using as collateral.

On June 1, 1992, after Baum's became over 30 days delinquent in making its loan payments, the FHA sent a "Notice of the Availability of Loan Service and Debt Settlement Programs for Delinquent Farm Borrowers." On June 30, 1992, Baum's returned an Acknowledgment of receipt of the Notice, and requested consideration for all available loan servicing programs. On July 15, 1992, the FHA sent another letter to Baum's advising Baum's that its application for loan servicing was incomplete, and that additional information was required. Baum's did not respond to this letter. However, on July 31, 1992, plaintiffs sent applications for the settlement of indebtedness to FHA. FHA returned these applications as incomplete.

On August 19, 1992, consistent with its established policy, FHA sent another notice to Baum's reiterating the availability of loan servicing and settlement of indebtedness programs. Plaintiffs never submitted an amended application for loan servicing. However, in September of 1992, plaintiffs again submitted partially completed applications for settlement of indebtedness. Along with the applications, the plaintiff's submitted checks in the amount of $3,000, with the notation "For Final Settlement of Indebtedness." On September 29 and October 1, 1992, FHA again notified the plaintiffs that their applications were incomplete, but FHA cashed the checks on September 29, 1992.

On April 28, 1993, the FHA County Committee, a local subdivision of the agency, processed plaintiffs' applications for settlement of indebtedness, and recommended to the FHA State Office that the applications be accepted. Apparently, the FHA State Office subsequently became aware of other financial difficulties that plaintiffs were having. As a result, over a year later, the FHA State Office advised the FHA County Committee that plaintiffs needed to supplement their applications with updated information. On May 3, 1994, FHA returned the $3,000 that it had previously accepted from plaintiffs.

After a series of letters, phone conversations and other correspondence, FHA ultimately denied plaintiffs' applications for settlement of indebtedness on May 21, 1996. In denying the application, FHA noted that the market value of the security parcel of land was $172,000. Plaintiffs owed $81,464, leaving over $90,000 in equity. According to FHA policy, in order for a debtor to be able to retain its interest in security property, any settlement offer must be at least equal to the debtor's equity in the security property. Because the plaintiffs only offered $3,000, rather than $90,000, FHA rejected the settlement offer. At the time the offer was rejected, plaintiffs' indebtedness stood at over $1,000,-000.

Plaintiffs pursued two separate administrative appeals. On January 10, 1997, the director of the National Appeals Division of the U.S. Department of Agriculture (the "director") ruled against plaintiff in both appeals. The relevant specific findings of the director are summarized below:

1. **Appeal # 96001943 ("Appeal # 1")**— The director noted that plaintiffs sold virtually all of their farmland and all of their farming equipment in 1991. After being notified twice of the availability of various loan servicing programs, plaintiffs chose to pursue settlement of the indebtedness and did not complete their applications for loan servicing. Because plaintiffs had ceased farming operations and because they had requested debt settlement during the period allowed for requesting loan servicing,

the director found that FHA had reasonably concluded that plaintiffs did not apply for loan servicing. Because plaintiffs did not apply for loan servicing, the director concluded that FHA's decision not to provide loan servicing for plaintiffs was not erroneous.

2. **Appeal # 96001548 ("Appeal # 2")**—With regard to FHA's rejection of plaintiffs' offer of settlement, the director found that the requests for additional information over a four-year period were reasonable, and that FHA's rejection of an offer of $3,000 was clearly reasonable given the amount of plaintiffs' equity in the security property. Finally, the director determined that FHA erred by cashing the checks upon which plaintiffs had written "For Final Settlement of Indebtedness," but that the error was not material to the decision to reject plaintiffs' offer, and that the acceptance of the check did not constitute acceptance of the offer of settlement.

On March 6, 1997, plaintiffs filed the instant complaint against the government, seeking judicial review of the administrative denials of relief. On November 17, 1997, plaintiffs filed the instant motion for summary judgment. On December 19, 1997, defendants filed their motion for summary judgment.

### Discussion

1. **Motion for summary judgment pursuant to Rule 56**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994) A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

### 2. Analysis

Plaintiffs make two types of claims in arguing for summary judgment in this case. First, plaintiffs assert that this court should overturn the findings of the director as arbitrary, capricious and contrary to law. Second, plaintiffs contend that their $1 million indebtedness to FHA was discharged, under the doctrine of accord and satisfaction, when FHA cashed the checks upon which plaintiffs had written, "For Final Settlement of Indebtedness." Defendants, on the other hand, ask this court simply to uphold the decisions of the director as not contrary to law, and to find that the requirements of accord and satisfaction are not present in this case.[1]

#### a. The findings of the director

The standard of review of agency action is set forth by the Administrative Procedure Act, which provides, in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—...
> (2) hold unlawful and set aside agency action, findings and conclusions found to be (A) arbitrary capricious, an abuse of discretion, or otherwise not in accordance with law; ....

5 U.S.C. § 706.

■ Plaintiffs make essentially four arguments that the findings of the director should

be overturned. First, plaintiffs argue that the FHA's own regulations require FHA to handle all settlement offers "promptly." In this case, plaintiffs filed their original applications on July 31, 1992 and they did not receive formal notification that FHA had denied their applications until May 21, 1996. Plaintiffs contend that the four-year delay in processing their settlement offer does not comport with FHA's own requirement of "promptness." Accordingly, plaintiffs assert that this delay amounted to arbitrary and capricious treatment of their offer.

In response, defendants contend that four years was a reasonable period in this case because the applications involved numerous joint debtors, multiple parcels of real property, and rapidly changing financial situations. The defendants argue that they should be allowed to consider changes in the financial status of debtors, and that the complexity of the situation in this case justified the four-year processing period.

Ultimately, this court finds that defendants' argument should prevail. Plaintiffs bear the burden of proving that FHA's actions were arbitrary and capricious. While this court recognizes, as did counsel for the government at oral argument, that the circumstances in this case were certainly not ideal, this court is satisfied based on the record presented that the government acted reasonably under the circumstances. Plaintiffs have not produced substantial evidence to suggest that the government acted improperly nor any authority to support their claim that four years is an unreasonable amount of time to deliberate under these circumstances. Accordingly, this court rejects plaintiffs' first argument.

■ Plaintiffs second argument is related to the first. Plaintiffs point to the fact that the FHA County Committee recommended that FHA accept the $3,000 offer of settlement in April of 1993, and that over a year later, the FHA State Office indicated that more information was necessary. Plaintiffs

---

1. As an initial matter, this court notes that the arguments submitted by parties for both sides in this case pertain almost exclusively to Appeal # 2. That is, the parties primarily address whether it was proper for FHA to reject plaintiffs' offer to settle its indebtedness. Plaintiffs do not make any substantial argument that they were entitled to loan servicing in this case.

contend that the request for "updated" information was beyond the scope of FHA's authority, and was arbitrary and capricious. Defendants contend that the request was necessitated by the plaintiffs' changing financial circumstances. Further, defendants point out that only the FHA State Office, and not the FHA County Committee, had the authority to approve or reject the settlement offer.

Here again, this court finds that defendants' argument should prevail. It is undisputed that the FHA County Committee did not have authority to approve the Baum's offer for settlement of their indebtedness. As a result, this court does not accept plaintiffs' claim that the County Committee's recommendation that the settlement offer be accepted precluded any future request for additional information. Moreover, plaintiffs have not provided any authority that supports their claim that such requests for additional information are unreasonable under circumstances similar to this case. Accordingly, plaintiffs are unable to establish that the government's actions in this case were arbitrary, capricious or contrary to law.

■ Plaintiffs' third argument is based upon FHA Instruction 1956.66(a)(3), which sets forth eight criteria to be considered in deciding whether to accept an offer of settlement. Plaintiff claims that defendants made factual findings with regard to only one of the eight, and that the denial of the offer of settlement without specific findings with regard to the other seven was arbitrary and capricious. However, nothing in Instruction 1956.66(a)(3) mandates that specific findings must be made with respect to *all* eight criteria. Further, it was an entirely separate requirement, namely 1956.66(a)(1), that was

the basis for FHA's denial of plaintiffs' offer. That section provides:

> Security may be retained by the debtor if the debtor offers an amount at least equal to the current fair market value ... less any prior lien amounts....

(Pl. Mot. for Summ. Judg. Exh. G at 6.) In this case, plaintiffs offered to pay $3,000 in exchange for discharge of the debt and retention of the security property. The property was appraised at a value of $172,000. Plaintiffs' equity in the property was approximately $90,000. Pursuant to 1956.66(a)(1), plaintiffs would not have been able to retain the property with an offer of only $3,000, regardless of any factual findings pursuant to 1956.66(a)(3). Accordingly, plaintiff's argument is without merit.

■ Fourth, plaintiffs take issue with the calculation of the value of the property. Plaintiffs contend that the appraisal upon which defendants based their calculations took place in 1996. Plaintiffs argue that defendants were required to use the "current" fair market value as of the date of the original application, or 1992. However, as defendants point out, use of the fair market value in 1992 would not have materially affected the outcome of FHA's decision. In 1992, the fair market value of the property was $147,000. At that time, the outstanding balance on the land contract was approximately $80,000, and there were outstanding delinquent real estate taxes of approximately $9,000. Accordingly, there was approximately $58,000 worth of equity in the property at that time. Obviously, plaintiffs' offer of $3,000 would still be far short of the amount required to satisfy 1956.66(a)(1). As a result, defendants' use of the 1996 appraisal value did not materially affect the decision to reject plaintiffs' offer to settle their indebtedness.[2]

2. This court notes that at oral argument, plaintiffs offered a calculation based on a fair market value of $147,000 that resulted in a negative equity value. The calculation offered by plaintiffs included deductions for, *inter alia*, the amount of the probable sales commission on a sale of the property and legal fees related to the sale. Plaintiffs argued that if their equity in the property was negative, then the offer of $3,000 was clearly a good faith offer for settlement of the indebtedness.

This court rejects that argument. First, those calculations and the values upon which they are

based are not a part of the record before this court. Plaintiff specifically referred to those figures for the first time at oral argument. Moreover, even if the basis for those calculations were a part of the record, this court notes that using added variables, such as the probable sales commission, directly conflicts with the plain language of 1956.66(a)(1), which provides that an offer to settle indebtedness must be at least equal to the current fair market value less any prior lien amounts. The regulation does not provide for the use of any additional deductions such as a sales commission. Plaintiffs offered no authority

For the reasons set forth above, this court finds that the director's decision to uphold the government's rejection of plaintiffs' offer to settle indebtedness was not contrary to law.

### b. Accord and satisfaction

The second broad type of claim made by plaintiffs is that there was an accord and satisfaction of the plaintiffs' debt when FHA negotiated the checks upon which plaintiffs had written, "For Final Settlement of Indebtedness." For the reasons set forth below, this claim fails on the facts of this case.

 An accord and satisfaction is a separate and new contract that operates to discharge or terminate an existing debt. The prior debt is discharged by a performance different from that which is claimed as due, and acceptance of such substituted performance. *See Nationwide Mutual Ins. Co. v. Quality Builders, Inc.*, 192 Mich.App. 643, 482 N.W.2d 474 (1992). An accord and satisfaction requires:

1. a good faith dispute over the amount of an unliquidated claim;

2. substituted performance that is tendered and accepted;

3. valuable consideration.

*See Kuehne & Nagel, Inc. v. U.S.*, 17 Cl.Ct. 11, 15 (1989); *Gitre v. Kessler Prod. Co.*, 387 Mich. 619, 198 N.W.2d 405 (1972); *Whitby v. Wiedeman*, 362 Mich. 383, 107 N.W.2d 779 (1961).

 Plaintiffs contend that all the required elements for an accord and satisfaction are present in this case. They argue that the repeated wrangling over their applications to settle the indebtedness evidences a good faith dispute over the amount of the claim. Specifically, plaintiffs claim that there is a good faith dispute over the amount of equity in the security property. Under FHA guidelines, that amount would arguably constitute the threshold for settlement of the claim. Moreover, plaintiffs argue that it was clear that the checks were submitted for "Final Settlement of Indebtedness." Under

for the proposition that this court should consider such added deductions, and accordingly, this

those circumstances, plaintiffs contend that FHA's negotiation of the checks operated as an acceptance of plaintiffs offer for an accord and satisfaction. Accordingly, plaintiffs ask this court to hold that their $1 million debt to FHA is discharged.

This court rejects plaintiffs' argument. As defendants point out, there was no good faith dispute about the *amount owed to FHA on the original promissory notes*. The fact that the parties may have disputed the amount of equity in the property, or that there may have been some dispute over how much FHA would accept in exchange for discharging the debt, does not change the fact that there is no disagreement over the amount of the original debt. Plaintiffs argue that the dispute is over whether they can retain the security property, making the amount of equity in the property the primary issue of dispute between the parties. However, the relief plaintiffs seek is the discharge of the entire debt. Their offer of $3,000 is clearly not a good faith calculation of the amount of the original debt they now seek to have discharged. Because there was no good faith dispute over the amount of the debt, there can be no accord and satisfaction in this case. *See Risk v. Wells Market Serv., Inc.*, 362 Mich. 414, 107 N.W.2d 776 (1961).

Accordingly, this court will decline to discharge plaintiffs' indebtedness under the doctrine of accord and satisfaction.

### Conclusion

Because the plaintiffs have not established that the decisions of the director were contrary to law, and because this court finds that there was no accord and satisfaction in this case, this court will grant defendants' motion for summary judgment and deny plaintiffs' motion for summary judgment.

Accordingly, this court having reviewed the submissions of the parties, and being fully advised in the premises,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 is **GRANTED.**

court will reject plaintiffs' argument.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' March 6, 1997 complaint is **DISMISSED with prejudice.**

**SO ORDERED.**