Elaine **LEONARDO**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 01–641 C.

United States Court of Federal Claims.

Jan. 24, 2003.

Gregory F. Wells, Washington, DC, for plaintiff. John H. Shenefield, of counsel.

Lawrence N. Minch, with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, and Mark A. Melnick, Assistant Director, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge.

This case is before the court on defendant's motion for summary judgment, plaintiff's cross-motion for partial summary judgment and plaintiff's motion for Rule 56(f)[1] discovery.[2] Plaintiff seeks damages for breach of contract and copyright infringement by the government. Both claims arise out of the destruction of her artwork while stored in the American Cultural Center in Brussels, Belgium.

### I. Background

Plaintiff is a professional artist who has exhibited and sold her artwork throughout the world. Pl.'s Opp. at 1.[3] An exhibition of plaintiff's artwork took place at the American Cultural Center (Center) in Brussels, Belgium around November 1990.[4] Complaint

---

**1.** Rule 56(g) became Rule 56(f) as a result of a revision of the Rules of the United States Court of Federal Claims, effective May 1, 2002.

**2.** The court has before it Defendant's Motion for Summary Judgment (Def.'s Mot.), Plaintiff's Consolidated Opposition to Defendant's Motion for Summary Judgment; Cross–Motion for Partial Summary Judgment; and Motion for Rule 56([f]) Discovery (Pl.'s Opp.), Appendix to Plaintiff's Consolidated Opposition to Defendant's Motion for Partial Summary Judgment; and Motion for Rule 56([f]) Discovery (Pl.'s App.), Defendant's Reply in Support of its Motion for Summary Judgment and Opposition to Plaintiff's Cross–Motion for Partial Summary Judgment and Motion for Rule

56([f]) Discovery (Def.'s Reply), and Plaintiff's Reply Brief in Support of Cross–Motion for Partial Summary Judgment and Motion for Rule 56(f) Discovery (Pl.'s Reply).

**3.** Facts cited to the filings of only one party do not appear to be disputed in connection with the pending motions.

**4.** Many facts of this case are disputed by the parties, including the identity of which U.S. agency operated the Center and its relation to the U.S. embassy in Brussels. Plaintiff claims the Center is part of the U.S. Embassy in Brussels, Pl.'s Opp. at 2, 24–28, while defendant argues that the Center was operated by the United States Information Service (USIS), an overseas

(Compl.) ¶ 31; Def.'s Mot. at 4. Following the exhibition, plaintiff's artwork was placed in a storeroom in the Center. Pl.'s Opp. at 2; Def.'s Mot. at 5. At some time during the next six years, plaintiff's artwork was moved to another storage space within the Center. Pl.'s Opp. at 3; Def.'s Mot. at 7.

In 1996, the owner of the building in which the Center was located began renovations of the entire building. Def.'s Mot. at 10. At the beginning of December, 1996, the side entrance of the building and an adjacent storage room were demolished by a bulldozer. Pl.'s Opp. at 3; Def.'s Mot. at 12. Plaintiff's artwork, which was stored in that storage room, was destroyed. *Id.*

Around November, 1997, plaintiff filed a tort claim with the U.S. Department of Justice for the damage to her artwork. Pl.'s Opp. at 4; Pl.'s App. at 47. Her claim was returned due to insufficient information on the Standard Form 95 (SF 95). *Id.* In November, 1998, plaintiff filed a revised tort claim with the U.S. Department of Justice and that agency forwarded the claim to the Department of State. Pl.'s Opp. at 4; Pl.'s App. at 48; Def.'s Mot. at 13. On or about January 4, 2001, the State Department denied plaintiff's claim. Pl.'s App. at 51–52.[5] Plaintiff filed this case on November 13, 2001, claiming breach of contract and copyright infringement by the defendant. Complaint ¶ 1.

## II. Discussion

### A. Summary Judgment Standard of Review

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. Rule of the United States Court of Federal Claims (RCFC) 56(c). Genuine disputes of material fact that may significantly affect the outcome of the matter preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The non-movant must establish the existence of a material element on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant's evidence is examined in the light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and all justifiable inferences must be drawn in favor of the non-movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. When, as here, there are cross-motions for summary judgment before the court, each motion is evaluated under the same standard. *Cubic Defense Sys., Inc. v. United States,* 45 Fed.Cl. 450, 457 (1999). Unsupported assertions or conclusory allegations are insufficient to withstand summary judgment. *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116 (Fed.Cir.1985).

### B. Claims Do Not Sound In Tort

■ Defendant alleges that this court does not have jurisdiction to hear plaintiff's claims because, according to defendant, plaintiff is asserting a negligence claim which sounds in tort. *See* Def.'s Mot. at 16–18. Plaintiff denies that her claims "sound in tort" and directs the court's attention to the statement of her claims in the complaint. Pl.'s Opp. at 6.

This court's subject matter jurisdiction is strictly construed. *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1372–74 (Fed. Cir.1983); *Mega Constr. Co. v. United States,* 29 Fed.Cl. 396, 472 (1993). The non-

---

component of the United States Information Agency (USIA). Def.'s Mot. at 4. In 1998, the USIA was abolished and its public diplomacy component was merged into the Department of State. *Id.*

**5.** The date of this letter is disputed by the parties. Defendant states that plaintiff's claim was denied by a letter dated December 27, 2000, *see* Def.'s Mot. at 14, but the copy of the letter attached to defendant's motion is unsigned. Appendix to Defendant's Motion for Summary Judgment (Def.'s App.) at 169–170. Plaintiff's copy of the denial letter, dated January 4, 2001, is signed. Pl.'s App. at 51–52. The dispute does not appear to be material.

moving party bears the burden of establishing jurisdiction by a preponderance of the evidence. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993).

Defendant correctly asserts that this court does not possess jurisdiction to entertain tort actions. *See* Def.'s Mot. at 16–17 (citing *McCauley v. United States,* 38 Fed.Cl. 250, 264 (1997); 28 U.S.C. § 1346(b)). But this court does have jurisdiction under the Tucker Act over "any claim against the United States founded … upon any express or implied contract with the United States …." 28 U.S.C. § 1491(a)(1) (1994). The court's jurisdiction extends only to actual contracts, express or implied, and not to contracts implied in law. *See Girling Health Sys., Inc. v. United States,* 949 F.2d 1145, 1146 (Fed.Cir.1991)(citing *Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 465, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980)). In addition, this court has exclusive jurisdiction over copyright infringement claims against the United States. *See* 28 U.S.C. § 1498(b).

Plaintiff alleges in the complaint both breach of contract and copyright infringement by defendant when plaintiff's artwork was not returned in the same condition in which it was tendered. *See* Compl. at ¶¶ 50–58, 59–754. These allegations are well-pleaded and sufficiently supported to withstand a motion for summary judgment based on lack of jurisdiction. Plaintiff's complaint is therefore well within this court's jurisdiction. The fact that defendant's breach or infringement may have occurred as a result of acts or omissions that might also give rise to tort liability is no bar to this court's jurisdiction. *See Hatzlachh Supply,* 444 U.S. at 465, 100 S.Ct. 647 (contractual remedies exist for implied-in-fact contracts with elements of a tort); *Am. Satellite Co. v. United States,* 20 Cl.Ct. 710, 713 (1990) (citing *Juda v. United States,* 6 Cl.Ct. 441, 453 (1984)).

Defendant's motion for summary judgment based on the court's lack of subject matter jurisdiction over tort claims is DENIED. Plaintiff's cross-motions for partial summary judgment that plaintiff's breach of contract claim and copyright infringement claim are within this court's jurisdiction are GRANTED.

## C.   Existence of Enforceable Contract

Defendant argues that there is no evidence of a contract between the parties and plaintiff responds that the record supports the existence of an enforceable contract. *See* Def.'s Mot. at 18; Pl.'s Opp. at 10.

Under the Tucker Act, the Court of Federal Claims has jurisdiction over claims against the United States founded upon the Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract. 28 U.S.C. § 1491(a)(1) (1994); *Gould, Inc. v. United States,* 67 F.3d 925, 928 (Fed.Cir.1995). A party alleging either an express or implied in fact contract with the United States must demonstrate: (i) mutual intent to contract; (ii) offer; (iii) acceptance; (iv) consideration; and (v) that the government representative who entered or ratified the agreement had actual authority to bind the United States. *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). A contract can cover any of a wide range of subjects. *Trauma Serv.,* 104 F.3d at 1326 ("[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government….").

Plaintiff alleges that she reached an agreement with Jan Van Kerkhove, the Cultural Affairs Advisor at the Center, regarding an exhibition of her artwork at the Center, including terms covering the completion of a body of artwork by the plaintiff; plaintiff's assistance in displaying the exhibition; the publication and promotion of the exhibit by the United States; the opportunity for plaintiff to create new artwork while in Brussels; the solicitation by the United States of additional exhibition venues in Europe for plaintiff's artwork; the safe storage of plaintiff's artwork by the United States following the exhibition; and the return of plaintiff's artwork in its original condition. Pl.'s Opp. at 2; Pl.'s App. at 5–7.

Defendant maintains that there is no such agreement. For the purposes of these motions, however, defendant concedes in briefing that plaintiff's declaration creates issues of material fact regarding the contents of her discussions with Van Kerkhove. Def.'s Reply at 3. Therefore, the court finds the first four elements of a contract to be inappropriate for decision at the summary judgment stage.

Defendant argues that plaintiff's contract claim should nevertheless be dismissed because there is no evidence that the government representatives involved had actual authority to bind the government. *Id.*

Plaintiff responds that the authority of Mr. Van Kerkhove remains a disputed issue of material fact and seeks discovery to develop the record. *See* Pl.'s Opp. at 16–20; Pl.'s Reply at 3–12. Plaintiff also maintains that, even if Mr. Van Kerkhove lacked actual authority, a government employee with actual authority ratified the alleged contract, Pl.'s Opp. at 16–19; Pl.'s Reply at 7–11, and claims that the Center's Cultural Affairs Officer, Mary Ann Ignatius, ratified the alleged agreement during a meeting with plaintiff.[6] Pl.'s Opp. at 17; Pl.'s App. at 7–8. In the alternative, plaintiff claims that the Honorable Maynard Wayne Glitman, the Ambassador to Belgium at the time of the exhibit, ratified the agreement. Pl.'s Opp. at 18; Pl.'s Reply at 10–11.

In addition to claiming ratification of Mr. Van Kerkhove's actions in Brussels, plaintiff also seeks to cast her exhibit as part of the Arts America Program (Program). Plaintiff's argument is that the Program could, if it encompassed plaintiff's exhibit, provide a context for an authorized agreement. *See* Pl.'s Opp. at 18–19. In this connection, plaintiff claims that the Arts America Program

Manager, Evangeline J. Montgomery, had actual authority to ratify the alleged agreement and seeks to depose Montgomery "to determine whether [plaintiff's] show was a one-time show for a specific USIS post authorized under the Arts America Program." Pl.'s Reply at 11; *see also* Pl.'s Opp. at 18–19.

■■■ As defendants argues, "[i]t is well established that the government is not bound by the acts of its agents beyond the scope of their actual authority." *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed.Cir.1998) (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). But actual authority may be implied when the necessary authority is considered to be an "integral part of the duties" of the particular government employee. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed.Cir.1989). A detailed inquiry into the precise nature of the employee's duties is appropriate to determine whether implied actual authority exists. *See Zoubi v. United States*, 25 Cl.Ct. 581, 587 (1992). In addition, an agreement made by a government agent without authority can be subsequently ratified by an agent with express or implied actual authority if the ratifying official has actual or constructive knowledge of the unauthorized act. *Harbert/Lummus*, 142 F.3d at 1433 (citing *United States v. Beebe*, 180 U.S. 343, 354, 21 S.Ct. 371, 45 L.Ed. 563 (1901)); *Dolmatch Group, Ltd. v. United States*, 40 Fed.Cl. 431, 438 (1998).

Defendant argues that no government official with actual authority made the promises alleged by plaintiff because neither Mr. Van Kerkhove nor Ms. Ignatius was a "Contracting Officer" (CO) as required by the Overseas Procurement Handbook (Handbook)[7] and neither had received a specific redelega-

---

6. Alternatively, plaintiff asserts that the alleged agreement was ratified by the USIS under the institutional ratification doctrine. Pl.'s Opp. at 19. Defendant disagrees, contending that the institutional ratification doctrine does not apply to the facts of this case, primarily because no written agreement exists. Def.'s Reply at 12; December 13, 2002 Oral Argument Transcript (Tr.) at 18, 109–10. Because the terms of the alleged agreement are in dispute, the court does not find the doctrine of institutional ratification to be applicable at this point in the case. *See,*

*e.g., United States v. Beebe*, 180 U.S. 343, 354, 21 S.Ct. 371, 45 L.Ed. 563 (1901)("Knowledge of the facts is the essential element of ratification.").

7. Defendant's argument on this point appears to rely on the assumption that the alleged contract is of a type covered by the Handbook. Until the terms of the contract are established, however, this issue can not be resolved.

tion of contracting authority from a CO. Def.'s Reply at 4–6. Defendant also maintains that neither Mr. Van Kerkhove nor Ms. Ignatius had implied actual authority to contract because contracting authority was not an "integral part" of their duties at the Center. December 13, 2002 Oral Argument Transcript (Tr.) at 14–18. Defendant further contends that Ambassador Glitman did not ratify the alleged contract because there is no evidence that he had "full knowledge of all the facts upon which the unauthorized action was taken." Def.'s Reply at 11 (citing *Harbert/Lummus*, 142 F.3d at 1433).

Plaintiff argues that the alleged contract is not a contract for the procurement of goods and services and therefore the government official did not have to be a CO in order to bind the government. Pl.'s Reply at 7. Plaintiff asserts that both Ms. Ignatius and Mr. Van Kerkhove had implied actual authority to contract because exhibit arrangements were an integral part of their duties at the Center. Pl.'s Opp. at 16–17; Pl's Reply at 7–10; Tr. at 41–43. Plaintiff specifically contends that, as the Cultural Affairs Officer of the Center, Ms. Ignatius was "in charge of putting on shows in the cultural center," Tr. at 41–42, and that the ability to "enter into agreements with artists and other cultural presenters" would be essential to her employment responsibilities. Pl.'s Reply at 9.

The question of authority is also complicated by defendant's assertion, made for the first time at oral argument, that plaintiff was on the "horns of a dilemma," Tr. at 7, because the alleged contract was either "subject to the [CDA]," Tr. at 5, or plaintiff had "presented no evidence of consideration." *Id.* Defendant contends either that there was consideration in the form of Ms. Leonardo's various services to the government, which would place the contract under the CDA, or the contract was formed after the provision of services by Ms. Leonardo and, therefore, no consideration was provided by plaintiff. Tr. at 9–13. Plaintiff argues that there was a global agreement and that the consideration provided the government, in the form of artwork, was not a service that would place the alleged contract under the CDA. Tr. at 35, 37, 39–40.

The court finds that the issue of whether an enforceable contract exists is not ripe for summary judgment because material facts are either undeveloped or disputed with respect to both the terms of the alleged agreement and the authority of the government officials involved. The court finds that the legal question regarding the classification of the contract as CDA or non-CDA can only be resolved when the terms of any contract are established. Because the issue of authority could be dispositive, however, defendant's motion for summary judgment as to breach of contract is STAYED pending further discovery and briefing on that issue. *See* RCFC 1 (The court's rules "shall be ... administered to secure the just, speedy, and inexpensive determination of every action.").

### D. Motion for Rule 56(f) Discovery

Plaintiff moves for limited discovery under RCFC 56(f) to determine the existence of the implied actual authority of Mr. Van Kerkhove and Ms. Ignatius, the involvement of Ambassador Glitman, and the role of the Arts America Program. *See* Pl.'s Opp. at 16–20; Pl.'s Reply at 3–11; Tr. at 47. Defendant argues that plaintiff's request should be denied because she did not "state with any precision how she expects discovery would enable her to demonstrate an agreement made by a Government official with actual authority to contract." Def.'s Reply at 7.

RCFC 56(f) states that, if it appears that affidavits are not sufficient to oppose a summary judgment motion, "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." RCFC 56(f). The Federal Circuit has held that discovery which reasonably related to " 'facts essential to justify the party's opposition' " to a summary judgment motion must be permitted or the motion denied. *Opryland USA, Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 852 (Fed. Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### 1. Jan Van Kerkhove

■ Plaintiff argues that the evidence in the present record "falls far short of establishing that [Mr.] Van Kerkhove ... lacked authority to enter into or ratify [plaintiff's] contract with the government." Pl.'s Reply at 3. Plaintiff contends that defendant's only factual allegation as to Mr. Van Kerkhove's authority to contract is that he lacked procurement authority and that fact is not relevant because the contract is not governed by the CDA. Pl.'s Opp. at 16 n. 8.

Defendant argues that it has already established that Mr. Van Kerkhove did not possess contracting authority and therefore additional discovery is unnecessary. Def.'s Reply at 9. Defendant claims that Mr. Van Kerkhove's declaration, stating he had no procurement authority and that he could not spend or commit U.S. government funds because he was not a U.S. citizen, is sufficient to establish that Mr. Van Kerkhove did not have authority to contract on behalf of the government. Def.'s Mot. at 22; Def.'s App. at 1–2.

Defendant does not address the possibility of implied actual authority to contract or the possible delegation of authority to Mr. Van Kerkhove. Plaintiff's motion for RCFC 56(f) discovery on the contracting authority of Mr. Van Kerkhove is GRANTED.

### 2. Mary Ann Ignatius

Plaintiff maintains that the declaration of Ms. Ignatius implies that entering into contracts with artists would be an integral part of her job when it states that "the overs[ight] [of] the installation and exhibition of American art within the exhibit space of the center" was one of her duties. Pl.'s Reply at 9. Therefore, plaintiff requests limited discovery to determine "a full and fair description" of Ms. Ignatius' duties. *Id.* at 10.

Defendant argues that Ms. Ignatius' declaration, and other supplemental documents, establish that she held no contracting authority and therefore plaintiff's request for additional discovery should be denied. Def.'s Reply at 9–10.

The court agrees with plaintiff that additional evidence regarding Ms. Ignatius' re-sponsibilities as the Center's Cultural Affairs Officer could assist plaintiff in its opposition to defendant's motion on the issue of authority. Therefore, plaintiff's motion for RCFC 56(f) discovery on the duties of Ms. Ignatius is GRANTED.

### 3. The Honorable Maynard Wayne Glitman

■ Plaintiff also seeks additional discovery to determine the extent of Ambassador Glitman's involvement with the alleged agreement. Pl.'s Opp. at 18; Pl.'s Reply at 10–11; Tr. at 94–95. Plaintiff argues that the letter to Ambassador Glitman referencing plaintiff's exhibit at the Center, *see* Pl.'s App. at 59, "plainly establishes that [he] was aware of [plaintiff's] show" and is "within the realm of possibility" that Ambassador Glitman looked into the background of the exhibit. Pl.'s Reply at 10.

Defendant argues that the letter plaintiff relies on to request additional discovery regarding Ambassador Glitman's role, *see* Pl.'s App. at 59, merely shows that Ambassador Glitman was aware of the show, not that he ratified the alleged contract. Def.'s Reply at 11; Tr. at 109–10. In addition, defendant points out that plaintiff has not presented evidence, or even made the contention, that Ambassador Glitman knew the terms of the alleged agreement. Def.'s Reply at 11.

The letter relied on by plaintiff merely informs Ambassador Glitman that plaintiff will be opening a show of her artwork in Brussels. *See* Pl.'s App. at 59. There is nothing before the court to indicate that Ambassador Glitman was even aware of the contract, much less ratified it with full knowledge of the facts. *See Harbert/Lummus,* 142 F.3d at 1433. Nor is there any indication that a person in Ambassador Glitman's position would routinely be in the position to ratify an agreement similar to the alleged contract. The fact that it is "within the realm of possibility" that Ambassador Glitman may have "inquired" about how plaintiff's art appeared on the walls is not a sufficient basis to pursue additional discovery regarding any role he may have played in ratifying the contract. Therefore, plaintiff's motion for RCFC 56(f) discovery regarding

Ambassador Glitman's involvement in ratifying the contract is DENIED.

### 4. The Arts America Program Manager

Plaintiff also seeks to depose the Manager of the Program "to determine whether [plaintiff's] show was a one-time show for a specific USIS post authorized under the Arts America Program." Pl.'s Reply at 11; *see also* Pl.'s Opp. at 19. Plaintiff contends that a deposition is appropriate because Ms. Montgomery's declaration was "based on three factual assumptions that are directly contrary to the facts in [plaintiff's] declaration." [8] Pl.'s Reply at 11. The court should have before it any additional testimony Ms. Montgomery can provide in discovery.

Defendant argues that plaintiff does not state what "specific information relevant to her claims" she hopes to obtain by deposing Ms. Montgomery. Def.'s Reply at 11. In addition, defendant points out that Ms. Montgomery's declaration states that she reviewed the records of the Program and plaintiff was not listed as a participating artist. Def.'s Reply at 12; Tr. at 77.

The court notes that all factual disputes must be resolved in plaintiff's favor at this stage in the litigation. The court is not convinced that Ms. Montgomery's declaration fully addresses the issues raised if the terms of the contract alleged in plaintiff's declaration are assumed to be true. Therefore plaintiff's motion for RCFC 56(f) discovery with regard to the Program Manager is GRANTED.

### E. Claim of Infringement of Copyright

### 1. Statute of Limitations Tolled by Administrative Claim

■ Defendant moves for summary judgment on plaintiff's copyright infringement claims arguing that the claims are time-barred under 28 U.S.C. § 1498(b). Def.'s Mot. at 30. Plaintiff cross-moves for partial summary judgment claiming her copyright infringement claims are timely because the statute of limitations was tolled while her claim for compensation was pending at the State Department.[9] Pl.'s Opp. at 33–36.

Section 1498(b) states:

> Except as otherwise provided by law, no recovery shall be had for any infringement of a copyright covered by this subsection committed more than three years prior to the filing of the complaint or counterclaim for infringement in the action, except that the period between the date of receipt of a written claim for compensation by the Department or agency of the Government . . . having authority to settle such claim and the date of mailing by the Government of a notice to the claimant that his claim has been denied shall not be counted as a part of the three years, unless suit is brought before the last-mentioned date.

28 U.S.C. § 1498(b) (1994).

Defendant argues that plaintiff's complaint was filed nearly five years after the destruction of plaintiff's artwork and was therefore well beyond the three year limitation period in section 1498(b). Def.'s Mot. at 30. Defendant further argues that the statute of limitations was not tolled because plaintiff's administrative tort claim did not give the State Department actual notice of her copyright infringement claims. Def.'s Mot. at 30–31; Def.'s Reply at 26; Tr. at 22. Plaintiff responds that the filing of her administrative claim for compensation with the State Department satisfied the tolling requirement of section 1498(b). Pl.'s Opp. at 33.

---

8. Plaintiff argues that the following factual assumptions, upon which Ms. Montgomery based her conclusions, are incorrect: (1) plaintiff contacted the USIS seeking to participate in a show; (2) plaintiff brought her works with her to the Center; and (3) plaintiff requested that her works be stored merely for her convenience at the end of the show. Pl.'s Opp. at 19.

9. In the alternative, plaintiff contends that the statute of limitations should be "equitably tolled during the pendency of her [administrative] claim for compensation due to the Defendant's misleading conduct during that claims process." Pl.'s Opp. at 36. Defendant argues that 28 U.S.C. § 1498 should not be construed to permit equitable tolling because it contains an express tolling provision. Def.'s Reply at 27. The court need not decide whether section 1498(b) was equitably tolled because the court finds the statute of limitations tolled by plaintiff's administrative claim.

Both parties agree that the administrative claim must have been "sufficiently detailed to afford the Government a realistic opportunity to consider and settle the claim." Def.'s Mot. at 31 (quoting *Custer v. United States,* 224 Ct.Cl. 140, 622 F.2d 554, 558 (1980)); Pl.'s Reply at 13. But they disagree over whether plaintiff's administrative claim satisfies this standard.

Defendant concedes that the State Department is the correct agency with which to file the administrative claim, Tr. at 23, but argues the agency did not have actual notice of the copyright infringement claims because plaintiff presented it as a tort claim. Def.'s Mot. at 30–31; Def.'s Reply at 26; Tr. at 22. Defendant does not appear to rely on the fact that the claim was filed on the Standard Form (SF–95) as a tort claim but rather focuses on the omission of a specific mention of the claim of copyright infringement.[10] Def.'s Motion at 30–31, Def.'s Reply at 26–27. Plaintiff contends that her administrative claim was sufficiently detailed to give the State Department notice and opportunity to settle the claim.[11] Pl.'s Opp. at 34–35; Pl.'s Reply at 13; Tr. at 68–69.

The canons of statutory interpretation require the court to consider first the plain language of the statute and any binding authority interpreting the language. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46:01, at 113–129 (6th ed. 2000) (Singer); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) ("The starting point for interpreting a statute is the language of the statute itself.").

The plain language of section 1498(b) requires only that a "written claim of compensation" be filed with the correct agency or department of the government. *See* 28 U.S.C. § 1498(b). There is no requirement in the statute that the agency have actual notice of the copyright infringement claim or that any specific office within the agency must receive the written claim for compensation.[12]

And, unlike its implementation of the Federal Tort Claims Act (FTCA), which has a similar tolling provision, the Department of Justice has not issued regulations to define the term "claim" or to direct the filing of a claimant's administrative copyright infringement claim to any specific office.[13] Nor has the Department of State issued regulations under 28 U.S.C. § 1498(b). Therefore the court relies on the plain language of the statute.[14]

The court finds that plaintiff's administrative claim was sufficient to toll the statute of limitations under 28 U.S.C. § 1498(b) despite the fact that it was filed as a tort claim. Plaintiff's administrative claim was a written claim for compensation which notified the correct agency, as conceded by defendant, of

10. It appears that defendant would have a weak argument if it relied on the use of SF–95 by plaintiff given the circumstances that plaintiff alleges. According to plaintiff's declaration, at least three government employees at the Department of Justice told her to use the SF–95 to make her claim against the government after plaintiff described to them the events leading up to the destruction of her artwork. Pl.'s App. at 16. In these circumstances, plaintiff's use of the SF–95 does not appear dispositive.

11. Although plaintiff attempts to characterize her administrative claim as "alleg[ing] that the defendant's negligence ... caused the destruction of her art," *see* Pl.'s Opp. at 34, the court notes that plaintiff's claim filed with the State Department contained merely factual assertions, with no legal characterization. *See* Pl.'s App. at 65–68.

12. Defendant argues that the tort claims office was not the correct location within the State Department for plaintiff to file her administrative claim "[b]ecause there must be someone within the State Department who has more specific understanding of the copyright laws than the attorney advisers who handle tort claims." Tr. at 23. Perhaps. But absent duly adopted and published guidance to filers, the argument is irrelevant.

13. The Department of Justice promulgated a regulation that set forth four elements of an administrative claim under 28 U.S.C. § 2675(a)(1994). *See* 28 C.F.R. § 14.2 (2001).

14. The court notes that the Department of Energy has issued regulations establishing the policies and procedures for the filing of infringement claims against that Department, *see* 10 C.F.R. § 782, but those regulations are not applicable to this case and the Department of State has not issued any similar regulations.

the underlying facts of a claim pending against the government and stated a sum certain for the damages. Therefore, defendant's motion for summary judgment of plaintiff's copyright infringement claims based on the statute of limitations is DENIED.[15]

2. Copyright Infringement Claims Arising in a Foreign Country

Defendant moves for summary judgment on plaintiff's copyright infringement claims under 28 U.S.C. § 1498(c) on the ground that the court does not possess jurisdiction to hear a copyright infringement claim based upon an incident that occurred in a foreign country. Def.'s Mot. at 25. Plaintiff contends that the infringement occurred in the United States and, in the alternative, that 28 U.S.C. § 1498(c) does not bar claims arising under U.S. copyright law based on conduct that occurred on diplomatic property. *See* Pl.'s Opp. at 20–32.

Section 1498(c) states: "The provisions of this section shall not apply to any claim arising in a foreign country." 28 U.S.C. § 1498(c). Plaintiff concedes that "Congress intended § 1498(c) to import the standard from the similar 'foreign country exception' in the Federal Tort Claims Act, 28 U.S.C. § 2680(k)." Pl.'s Opp. at 23. Plaintiff then argues, however, that section 2680(k) should not "stand[ ] for the proposition that it would bar any claim that occurs on foreign soil." *Id.*

Plaintiff contends that § 1498(c) was adopted to prevent subjecting the U.S. government to liability under foreign copyright law and therefore there are two questions to consider in determining whether it applies: (1) whether the copyright infringement occurred on foreign soil; and (2) whether foreign law would necessarily apply in a given case. *See* Pl.'s Opp. at 23–24. Plaintiff argues that, because the alleged infringement occurred at the Center which, plaintiff contends, is part of the American Embassy,[16] U.S. copyright law would govern the claims and therefore the provision does not apply. *See* Pl.'s Opp. at 24–25; Tr. at 48–63.

Plaintiff also argues that, notwithstanding section 1498(c), the copyright infringement claim is not barred because the infringement occurred in the U.S., not in a foreign country.[17] Pl.'s Opp. at 21–22. Plaintiff contends that infringement under 17 U.S.C. § 106A (1994), the Visual Artists Rights Act of 1990, is not the physical destruction of the artwork in Brussels but instead "the deprivation from the author of the right to prevent her works from being destroyed." Pl.'s Opp. at 21; Tr. at 64–66. Plaintiff argues that the destruction violated her moral right to integrity and that her moral rights reside in her person, not in her artwork. Pl.'s Opp. at 22. Because plaintiff resides in the state of Washington, the infringement occurred there. *Id.*

---

**15.** Plaintiff's cross-motion for partial summary judgment is MOOT because of the court's ruling under 28 U.S.C. § 1498(c).

**16.** Defendant contends that the Center is not part of the U.S. Embassy, *see* Def.'s Mot. at 5, 8–9, but viewing this issue in the light most favorable to plaintiff, the court will consider the Center to be diplomatic property for the purpose of this motion.

**17.** In the alternative, plaintiff moves for RCFC 56(f) discovery to "flesh out" the "headquarter[ ]s claim" alleged in her complaint. Pl.'s Opp. at 30. Plaintiff alleged that State Department officials in the U.S. may have been the source of gross negligence that led to the destruction of her artwork. *Id.* at 32. Plaintiff claims that "it is likely that discovery will reveal the existence of negligent acts by officials in the [U.S.] that may prove to be the proximate cause of [p]laintiff's injuries." *Id.* Plaintiff specifically argues two things are "potentially findable," either direction or influence by officials in the U.S. to move plaintiff's artwork to the "garbage room" in the basement, or influence by officials in the U.S. on the decision on when to physically pack the boxes and leave the Center. Tr. at 96–98. The court finds it highly unlikely that government officials in the U.S. were directly involved in day-to-day management, such as moving boxes and artwork from room to room, or that they could have been responsible for the negligent operation of a bulldozer in Brussels, Belgium. The court finds that the proposed discovery is a "fishing expedition" about matters that are speculative and is based on a mere hope that "something will turn up." *See Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed.Cir.1996). *See also Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1116 (Fed.Cir.2000). Plaintiff's motion for RCFC 56(f) discovery on a "headquarters claim" is DENIED.

Defendant argues that, because the language of 28 U.S.C. § 1498(c) is identical to that of 28 U.S.C. § 2680(k), "the two statutes should be interpreted *pari passu*."[18] Def.'s Mot. at 26 (quoting *Northcross v. Bd. of Educ.*, 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973)). Defendant contends that because section 1498(c) was enacted after section 2680(k) for a similar purpose, Congress indicated its intent that the two statutes would operate in the same manner by choosing the same language. Def.'s Mot. at 26–27. The court agrees.

The plain language of the statute, "arising in a foreign country," does not appear to the court to be ambiguous.[19] In addition, the court finds that the relevant legislative history supports the plain language of the statute. *See* 2A Singer, *supra,* § 48:01 at 411–415. It is apparent from the legislative history that section 1498(c) was adopted "to remove the possibility of [the bill] being interpreted as applying to acts of infringement in foreign countries." *Zoltek Corp. v. United States,* 51 Fed.Cl. 829, 835 (2002) (quoting S.Rep. No. 86–1877, at 7 (1960), *reprinted in* 1960 U.S.C.C.A.N. 3444, 3450). In addition, the Acting Director of the USIA recommended the adoption of the language from section 2680(k) for section 1498(c) because without it the proposed legislation was "not by its terms limited to infringements in the United States." Def.'s Mot. at 27 (quoting S.Rep. No. 86–1877, at 11 (1960), *reprinted in* 1960 U.S.C.C.A.N. 3444, 3452). He also brought to the attention of Congress the interpretation of the FTCA by the U.S. Supreme Court which confirmed its application only to acts occurring in the United States. *Id.*

The FTCA has been interpreted to apply only to tortious conduct occurring in the United States. *See United States v. Spelar,* 338 U.S. 217, 219, 70 S.Ct. 10, 94 L.Ed. 3 (1949); *Smith v. United States,* 507 U.S. 197, 200–202, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993). U.S. courts do not possess jurisdiction under the FTCA to hear a claim based on an incident that took place at a government facility, even an embassy, abroad. *See*

*id.* In addition, for the purposes of the FTCA, an act "arises" "where the negligent act or omission occurs," *Nurse v. United States,* 226 F.3d 996, 1003 (9th Cir.2000)(internal citations omitted), not at the place where the act or omission had its "operative effect." *Richards v. United States,* 369 U.S. 1, 10, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

Here, the act which destroyed plaintiff's artwork took place in Brussels, Belgium. Therefore, plaintiff's copyright infringement claim is barred by 28 U.S.C. § 1498(c) and defendant's motion for summary judgment on plaintiff's copyright infringement claim is GRANTED.

### III. Conclusion

Defendant's motion for summary judgment based on the court's lack of subject matter jurisdiction over tort claims is DENIED. Plaintiff's cross-motions for partial summary judgment that plaintiff's breach of contract claim and copyright infringement claim are within this court's jurisdiction are GRANTED.

Defendant's motion for summary judgment as to breach of contract is STAYED pending further discovery and briefing.

Plaintiff's motion for RCFC 56(f) discovery with regard to Mr. Van Kerkhove, Ms. Ignatius and the Program Manager is GRANTED. Plaintiff's motion for RCFC 56(f) discovery with regard to Ambassador Glitman's involvement in ratifying the contract and with regard to plaintiff's "headquarters claim" is DENIED.

Defendant's motion for summary judgment on plaintiff's copyright infringement claim based on the statute of limitations is DENIED. Plaintiff's cross-motion for partial summary judgment is MOOT.

Defendant's motion for summary judgment on plaintiff's copyright infringement claim under 28 U.S.C. § 1498(c) is GRANTED.

Either party may conduct discovery regarding the authority of Mr. Van Kerkhove,

---

18. "Pari passu" is defined as "[a]t an equal place; side by side." American Heritage Dictionary 1278 (4th ed.2000).

19. Plaintiff's argument implicitly suggests that the term "arising" in section 1498(c) is ambiguous.

Ms. Ignatius and the Program Manager to enter into the contract alleged by plaintiff in her declaration. The parties shall file with the court a joint status report within 14 days of this opinion detailing the discovery efforts to be made on this topic and suggesting a schedule for further proceedings in this matter.

IT IS SO ORDERED.