**Elaine LEONARDO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 01–641 C.**

United States Court of Federal Claims.

March 17, 2004.

Gregory F. Wells, Washington, DC, for plaintiff. Peter E. Halle, Stacey C. Burton and Christopher E. Tierney, Washington, DC, of counsel.

Kyle Chadwick, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director and Mark A. Melnick, Assistant Director, Civil Division, United States Department of Justice, Washington, DC, for defendant. Kevin M. Gleeson, Department of State, Washington, DC, of counsel.

*OPINION AND ORDER*

HEWITT, Judge.

This case is before the court on a single issue-the authority of the government representative to bind the United States-not decided by the court in its prior opinion on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. *See Leonardo v. United States,* 55 Fed.Cl. 344 (2003). Plaintiff seeks damages for breach of contract by the government. Plaintiff's claim arises out of the destruction of her artwork while stored in the American Cultural Center in Brussels, Belgium.

## I. Background [1]

Plaintiff is a professional artist. Complaint (Compl.) ¶¶ 2, 11–14. From October 31, 1990 to November 27, 1990, plaintiff's artwork was exhibited at the American Cultural Center (Center) in Brussels, Belgium. *Id.* ¶ 31; Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact (Def.'s Resp. PFUF) ¶ 6. Following the exhibition, plaintiff's artwork was stored at the Center. *See* Def.'s Resp. PFUF ¶¶ 14, 22 (demonstrating that, although the parties disagree on the details of the storage, they agree that plaintiff's art was stored at the Center). In December 1996, the majority of plaintiff's artwork that was stored at the Center was destroyed when the room in which her art was stored was bulldozed. *Id.* ¶¶ 34, 37.

---

1. Facts cited to the filings of only one party do not appear to be disputed in connection with the pending motions. The court only recites the facts important to the present decision. For additional background information, see *Leonardo,* 55 Fed.Cl. at 345–46.

During the period of time relevant to plaintiff's case, Mary Ann Ignatius was the United States Information Service's (USIS) Cultural Affairs Officer in Belgium. Plaintiffs' Opposition to Defendant's Motion for Summary Judgment and Cross–Motion for Partial Summary Judgment on the Issue of Contracting Authority (Pl.'s Opp.) at 1. Ms. Ignatius was the supervisor of Jan Van Kerkhove, the USIS Senior Cultural Advisor in Belgium. *Id.*

■ Plaintiff filed this case on November 13, 2001, claiming breach of contract and copyright infringement by defendant. Compl. ¶ 1. On January 24, 2003, the court ruled on the majority of defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment.[2] *See Leonardo,* 55 Fed.Cl. at 354. With respect to the issue of whether an enforceable contract existed, the court found that there were disputed issues of material fact regarding the first four elements necessary for the formation of a contract.[3] *Id.* at 348–49. The court found that the fifth element necessary to establish a contract, whether the government representative who entered or ratified the alleged contract had the authority to bind the United States, could be dispositive as to the existence of a contract and stayed the motions for summary judgment "pending further discovery and briefing" on that issue. *Id.* at 347, 349. The court now has before it further briefing and discovery on the issue of contracting authority.

## II. Discussion

### A. Standard of Review

Summary judgment is warranted when there are no genuine issues of material fact

and the moving party is entitled to judgment as a matter of law. Rules of the United States Court of Federal Claims (RCFC) 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact that might significantly affect the outcome of the litigation is material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *Id.* at 247–48, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987). The movant is also entitled to summary judgment if the non-movant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run, *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984). "When both parties move for summary judgment, each party's motion must be evaluated on its own merits and all reasonable infer-

---

**2.** The court ruled that plaintiff's complaint is within the jurisdiction of the court, *Leonardo,* 55 Fed.Cl. at 347; granted plaintiff's motion for Rule 56(f) discovery on the contracting authority of Mr. Van Kerkhove, *id.* at 350; granted plaintiff's motion for Rule 56(f) discovery on the duties of Ms. Ignatius, *id.;* denied plaintiff's motion for Rule 56(f) discovery regarding Ambassador Maynard Wayne Glitman's involvement in ratifying the alleged contract, *id.* at 350–51; granted plaintiff's motion for Rule 56(f) discovery with regard to the Arts America Program Manager, *id.* at 351; denied defendant's motion for summary judgment on plaintiff's copyright infringement claims based on the statute of limi-

tations, *id.* at 352; and granted defendant's motion for summary judgment on plaintiff's copyright infringement claim, *id.* at 354.

**3.** A party alleging either an express or implied-in-fact contract with the United States must demonstrate: (i) mutual intent to contract; (ii) offer; (iii) acceptance; (iv) consideration; and (v) that the government representative who entered or ratified the agreement had actual authority to bind the United States. *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir. 1997); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990).

ences must be resolved against the party whose motion is under consideration." *McKay v. United States,* 199 F.3d 1376, 1380 (Fed.Cir.1999).

B. Type of Contract Alleged

In the court's prior opinion it found that the legal question regarding whether the contract alleged would be covered by the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (2000), or the Overseas Procurement Handbook (Handbook), Appendix to Defendant's Reply in Support of its Motion for Summary Judgment and Opposition to Plaintiff's Cross–Motion for Partial Summary Judgment and Motion for Rule 56(g) Discovery (Def.'s Reply App.) at 12–98 (containing U.S. Information Agency, Overseas Procurement Handbook (1990)), could not be resolved until the terms of the contract were established. *Leonardo,* 55 Fed.Cl. at 348 n. 7, 349. After further development of the case, the court finds that the contract alleged is a bailment contract,[4] which is not covered by the CDA or the Handbook.

 A bailment relationship occurs when "an owner, while retaining title, delivers personalty to another for some particular purpose upon an express or implied contract. The relationship includes a return of the goods to the owner or a subsequent disposition in accordance with his instructions." *Lionberger v. United States,* 178 Ct.Cl. 151, 371 F.2d 831, 840 (1967). Plaintiff states that she retained title to and ownership of her works of art at all times. Appendix to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross–Motion for Partial Summary Judgment on the Issue of Contracting Authority (Pl.'s App.) at 11 (Declaration of Elaine Leonardo (Pl.'s Decl.) ¶ 39). Plaintiff states that she sent through diplomatic pouch and personally delivered pieces of her artwork to the U.S. Embassy's American Cultural Center in Brussels. *Id.* ¶¶ 25, 26. Plaintiff alleges that, following the exhibition in Brussels, defendant agreed to "solicit additional venues in Belgium and elsewhere in Europe in which to exhibit [her] artwork," *id.* ¶ 18(K), to "store and keep safe all of [plaintiff's] artwork ... at the American Cultural Center at all times when [her] artwork was not being exhibited at additional venues," *id.* ¶ 18(M), and to return her artwork to her in its original condition, *id.* ¶ 18(N). In sum, plaintiff alleges a bailment contract existed, that is, that she delivered her artwork to defendant, that defendant agreed to exhibit and store her artwork, and that defendant agreed to return her artwork to her. At oral argument, defendant conceded that, based on the allegations in plaintiff's declaration, plaintiff stated a claim for a bailment contract. Transcript of Oral Argument held on Feb. 12, 2004(Tr.) at 24–25. Because the only contract that could exist in the present case is the one alleged by plaintiff, plaintiff states a claim for a bailment contract.

A bailment contract does not fall within the scope of the CDA or the Handbook. The CDA "applies to any express or implied contract ... entered into by an executive agency for-(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or, (4) the disposal of personal property." 41 U.S.C. § 602(a). The Handbook defines a contract as "a type of procurement instrument ... used for the acquisition by purchase, lease or barter of property or services for the direct benefit or use of the Federal Government." Def.'s Reply App. 21. The court understands, and neither party suggests otherwise, that both the CDA and Handbook regimes are addressed to the procurement of goods and services. A bailment contract is not a traditional goods and services procurement contract, and the court does not understand bailment to be encompassed within the goods and services procurement scheme. *Cf. Kuehne & Nagel, Inc. v. United States,* 17

---

4. This court has jurisdiction over express and implied-in-fact bailment contracts. *See Johns–Manville Corp. v. United States,* 12 Cl.Ct. 1, 25 (1987) ("A bailment contract that serves as the basis for recovery in this court must be either express or implied-in-fact."); *see also Hatzlachh*

*Supply Co. v. United States,* 444 U.S. 460, 465 n. 5, 466, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980) (explaining that Tucker Act jurisdiction extends to contracts that are express or implied-in-fact and that the existence or lack of a tort remedy has no bearing on Tucker Act jurisdiction).

Cl.Ct. 11, 17 (1989) (recognizing that an implied-in-fact bailment contract arises when the United States seizes merchandise under the customs laws and imposes on the United States a "duty to release the seized shipment in a properly preserved condition"); *Ins. Co. of N. Am. v. United States*, 11 Cl.Ct. 1, 4 (1986) (alleging that the detention of products by United States Customs Service constitutes a bailment); *id.* (stating that an implied-in-fact bailment contract requires "a promise, representation or statement by any authorized government official that plaintiff's *goods would be returned* damage-free" (emphasis added)).

Because the court reads plaintiff's filings to state a claim for a bailment contract, defendant's arguments that neither Mr. Van Kerkhove nor Ms. Ignatius had express actual authority to bind the government because they were not Contracting Officers and had not been delegated or redelegated contracting authority, Defendant's Renewed Reply in Support of Its Motion for Summary Judgment, and Opposition to Plaintiff's Renewed Cross–Motion for Partial Summary Judgment (Def.'s Renewed Reply) at 3, are unavailing. Defendant's argument assumes that the alleged contract falls within the statutory and regulatory scheme applicable to procurement contracts. The court analyzes the balance of defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment within the bailment contract context.

### C. Contracting Authority

■ In order to establish the existence of a contract, a plaintiff must show that the government employee who entered or ratified the agreement had actual authority to contract. *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997). "[T]he government is not bound by the acts of its agents beyond the scope of their actual authority." *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed.Cir.1998) (citing *Fed. Crop. Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). Actual authority may be implied when the necessary authority is considered to be an "integral part of the duties"

of the particular government employee. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed.Cir.1989). An inquiry into the precise nature of the government employee's duties is appropriate to determine whether implied actual authority exists. *See Zoubi v. United States*, 25 Cl.Ct. 581, 587 (1992).

### 1. Express Actual Authority

■ Plaintiff argues that Mr. Van Kerkhove had express actual authority to bind the United States contractually. Pl.'s Opp. at 11. Defendant disputes plaintiff's argument. *See* Def.'s Renewed Reply at 3 ("Mr. Van Kerkhove []acked [a]ctual [c]ontracting [a]uthority."). Defendant's motion for summary judgment relies on the assumption that the alleged contract is covered by the Handbook. *See id.* (arguing that neither Ms. Ignatius nor Mr. Van Kerkhove held contracting warrants). Because the court found that a bailment contract does not fall within the procurement scheme to which the Handbook applies, defendant's motion for summary judgment must be denied as a matter of law. With respect to plaintiff's cross-motion for summary judgment, genuine issues of material fact remain regarding whether Mr. Van Kerkhove had actual authority to bind the government.

Plaintiff argues that "[Mr.] Van Kerkhove had authority to enter into contracts with artists to display their works at the ACC, so long as he obtained his supervisor's approval." Pl.'s Opp. at 15. Plaintiff points to Mr. Van Kerkhove's position description as factual support for this statement. *Id.* at 11. The 1989 Position Description Update for Mr. Van Kerkhove states:

*Authority to [M]ake Commitments:* Clearance by the supervisor is required in all instances. This is essential for good working relations, and communication.

Pl.'s App. at 32. Even if the position description grants Mr. Van Kerkhove express actual authority to contract, an issue that is disputed and which the court does not decide, *compare* Pl.'s Opp. at 11 n. 29 (arguing that government "commitments" are enforceable contracts within the meaning of the Tucker Act) *with* Def.'s Renewed Reply at 3 (stating that there is no basis for making the "leap"

that use of the word "commitments" means contracting authority existed), the exercise of any such authority requires "[c]learance by the supervisor," Pl.'s App. at 32, and it is factually disputed whether Ms. Ignatius approved the alleged contract.

Plaintiff cites paragraphs twenty-three and thirty of plaintiff's declaration for the contention that "[Ms.] Ignatius approved the agreement worked out between Leonardo and Jan Van Kerkhove." Plaintiff's Proposed Findings of Uncontroverted Fact ¶ 8. As defendant points out, see Def.'s Resp. PFUF ¶ 8, plaintiff's contention is factually unsupported. Paragraph twenty-three of plaintiff's declaration states:

> At [the meeting at the home of Ms. Ignatius], Ms. Ignatius and I discussed the agreement that I had worked out with Jan Van Kerkhove. We specifically discussed the invitations for the show, framing for my artworks, how and where I could acquire art supplies in Brussels, assistance with the show from her assistant, Philip Remy, the vernissage, public relations activities for the show, photography of the show, hanging the show, my lecture, storage of my artwork and supplies after the show and efforts to help me find new shows.

Pl.'s App. at 8 (Pl.'s Decl. ¶ 23). Assuming plaintiff's statement to be true, the fact that plaintiff and Ms. Ignatius discussed the terms of the alleged contract and logistics of the exhibition does not mean that Ms. Ignatius approved the alleged contract. Paragraph thirty of plaintiff's declaration states:

> I also attended a number of meetings with Jan Van Kerkhove and Mary Ann Ignatius, then Cultural Attaché for the U.S. Embassy in Belgium, at their offices at the American Cultural Center. I had frequent

contact with Mary Ann Ignatius during this time. She was intimately involved in preparing for the exhibition, and was fully aware of every detail of the show. Every aspect of the exhibition had to meet with her approval, and it did. Exhibit D.

Pl.'s App. at 9–10 (Pl.'s Decl. ¶ 30). Again, the fact that Ms. Ignatius approved "[e]very aspect of the exhibition" does not necessarily mean that she approved an agreement that Mr. Van Kerkhove and plaintiff discussed. Furthermore, the exhibit plaintiff cites in support of paragraph thirty is a picture of Ms. Ignatius and Mr. Van Kerkhove in front of one of plaintiff's paintings. Pl.'s App. at 21 (Pl.'s Decl. Ex. D). The picture does not provide support for the argument that Ms. Ignatius approved an agreement between plaintiff and Mr. Van Kerkhove. Ms. Ignatius does not, in fact, recall any agreement with plaintiff regarding the exhibition or storage of plaintiff's artwork. See Appendix to Defendant's Motion for Summary Judgment (Declaration of Mary Ann Ignatius ¶ 5 ("I do not have a clear, precise memory of the events that led to [plaintiff's] exhibit at the Center, or of the storage of her works at the conclusion of the show.")). There is no uncontroverted evidence that Ms. Ignatius approved the alleged contract between plaintiff and defendant. In the absence of Ms. Ignatius' approval, Mr. Van Kerkhove could not have had actual authority to bind the government.[5] Defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment regarding express actual authority are both DENIED.

### 2. Implied Actual Authority

■ Plaintiff argues that both Mr. Van Kerkhove and Ms. Ignatius had implied actual authority to bind the United States con-

---

5. Plaintiff also cites a memorandum from Mr. Van Kerkhove to Joe MacManus regarding the "Leonardo matter," dated August 25, 2000, in support of her argument that Mr. Van Kerkhove had express actual authority to enter into contracts on behalf of the government and that Ms. Ignatius approved the alleged contract. Pl.'s Opp. at 12. In the memorandum, Mr. Van Kerkhove states, "Although I worked fairly independently on these exhibits ..., all steps engaging the liability of the USIS, which fell under the Center Director's responsibility, were always dis-

cussed with him or her. Such steps included ... entering into agreements with artists and/or outside venues." Pl.'s App. at 34. While this passage indicates that Mr. Van Kerkhove "always discussed" entering into agreements with the Center Director, it cannot be interpreted to mean that Ms. Ignatius approved the specific agreement alleged to exist between plaintiff and the United States. The passage does not resolve the disputed issue of material fact regarding whether Ms. Ignatius approved the alleged contract.

tractually. Pl.'s Opp. at 15. "'Authority to bind the government is generally implied when such authority is considered to be an integral part of the duties assigned to a government employee.'" *H. Landau & Co.*, 886 F.2d at 324 (quoting John Cibinic, Jr. & Ralph C. Nash, Jr., *Formation of Government Contracts* 43 (1982)). It is a disputed issue of material fact whether the ability to contract was an integral part of Mr. Van Kerkhove's and Ms. Ignatius' duties.

Plaintiff argues that Mr. Van Kerkhove and Ms. Ignatius had implied actual authority "by virtue of their respective positions as Cultural Affairs Specialist and Cultural Affairs Officer." Pl.'s Opp. at 15. Plaintiff states that "[Mr.] Van Kerkhove's job required him to engage artists in binding contracts to present their artwork at the [Center]" and that "[Ms.] Ignatius' primary function-to oversee cultural programs at the [Center]-required the power to contract with artists." *Id.* at 16. The court agrees with defendant that the evidence plaintiff relies on to prove that forming contracts was an integral part of Ms. Ignatius' and Mr. Van Kerkhove's duties "is only a string of disconnected quotations reflecting the undisputed proposition that Ms. Ignatius and Mr. Van Kerkhove were responsible for *managing* the day-to-day operations of the Cultural Center, and *planning* and *organizing* arts and cultural affairs activities there." Def.'s Renewed Reply at 6. Defendant argues that Ms. Ignatius and Mr. Van Kerkhove could and did perform their duties without the ability to contract with artists. *Id.* at 7. Defendant points to Mr. Van Kerkhove's Supplemental Declaration, *id.* at 9, in which he states that "[n]one of the Center's dealing with visiting artists or musicians was done in an atmosphere of

contracts or mutually agreed obligations,"[6] Def.'s Reply App. at 4 (Supplemental Declaration of Jan Van Kerkhove ¶ 8). Thus, it is disputed whether contracting was an integral part of the duties of either Mr. Van Kerkhove or Ms. Ignatius.

Plaintiff further argues that Ms. Ignatius "derived implied actual authority to contract by virtue of her power to manage the [Center]."[7] Pl.'s Opp. at 18. Plaintiff asserts that "[t]his Court has routinely found that the power to manage necessarily includes the authority to contract." *Id.* at 18–19 (citing *Arizona v. United States*, 216 Ct.Cl. 221, 575 F.2d 855, 861 (1978); *Zoubi v. United States*, 25 Cl.Ct. at 587; *Son Broadcasting, Inc. v. United States*, 52 Fed.Cl. 815, 821 (2002)). Defendant contends that plaintiff's interpretation of the caselaw is incorrect. Def.'s Renewed Reply at 7. The cases cited by plaintiff are distinguishable from the present case.

*Son Broadcasting* is distinguishable because, in making the determination that implied actual authority existed, the court did not examine "the nature of the duties assigned." *See Zoubi*, 25 Cl.Ct. at 587 ("[T]he nature of the duties assigned ... must be examined to determine whether [the federal employee] had the implied authority to bind the [government] ...."). The court in *Son Broadcasting* found that Forest Supervisors have express actual authority to enter into binding contracts. 52 Fed.Cl. at 821. The court noted that, even if the Forest Supervisors did not have express actual authority, they had implied actual authority because "the issuance of special use authorizations is sufficiently 'integral' to the land management duties of a Forest Supervisor." *Id.* Because the court provided no examination of the duties assigned to the Forest Supervisor, there is no basis from which to compare the

6. Plaintiff argues that "[t]his statement does not create a genuine issue of material fact because it is directly contradicted by a pre-litigation document authored by Van Kerkhove which indicated that he *did* enter into agreements with artists after involving the [Cultural Affairs Officer]." Pl.'s Reply at 8. The document and passage to which plaintiff refers is quoted in the previous footnote. The court does not believe that Mr. Van Kerkhove's Supplemental Declaration and the memo necessarily contradict each other. The memo refers to "entering into agreements," while the Supplemental Declaration refers to the

absence of "contracts or mutually agreed obligations." Even in a non-contractual atmosphere, the Center employees would have to agree with artists on, for example, whether or not to have an exhibition of the artist's work and on the logistics of the exhibition.

7. Plaintiff cites Ms. Ignatius' 1991 Officer Evaluation Report, which states that one of her work requirements was to "[m]anage the activities of the Cultural Center." Pl.'s App. at 43.

position of a Forest Supervisor to that of a Cultural Affairs Officer.

*Arizona v. United States* is distinguishable because there, the court found that the Director of the Bureau of Prisons had a "sizable grant of authority" to "manage and control all penal and correctional institutions of the United States." 575 F.2d at 861. The Director was "impliedly granted[ed] authority . . . to contract specifically with respect to the services of federal prisoners." *Id.* If there is a grant of authority to the Cultural Affairs Officer in the present case, it is certainly not as "sizable" as the one granted to the Director of a national bureau. The difference in magnitude of the alleged grant of authority makes *Arizona v. United States* inapplicable to the present case.

*Zoubi*, while perhaps the most similar to the present case, is distinguishable due to the nature of the management responsibility. In *Zoubi*, the government employee managed the Saudi Arabian Project, which was a program to train Saudi Arabian Customs personnel. 25 Cl.Ct. at 583. During the time at issue in the case, the employee was establishing a new training project. *Id.* at 587. "Implicit in this undertaking was the authority to obtain [interpreters] for . . . the project." *Id.* The court found that the employee had the implied authority to bind the government to a contract that provided an employment incentive. *Id.* at 588. *Zoubi* is a stronger case for finding the authority to contract than this one because in *Zoubi* the power to manage the training program necessarily included the power to hire personnel to provide the training. Here, the power to "[m]anage the activities of the Cultural Center . . . so as to create a positive image of the United States," *see* Pl.'s App. at 43 (1991 Officer Evaluation Report for Ms. Ignatius), does not necessarily include the power to contract. Because all of the cases are distinguishable, it cannot be said that, as a matter of law, the Cultural Affairs Officer's power to manage necessarily includes the power to contract.

Because issues of material fact remain regarding whether the power to contract was an "integral" part of Ms. Ignatius' and Mr. Van Kerkhove's duties and because Ms. Ignatius' power to manage the Center does not, as a matter of law, necessarily include the power to contract, plaintiff's cross-motion for summary judgment that Mr. Van Kerkhove and Ms. Ignatius had implied actual authority to bind the government is DENIED.[8]

### III. Conclusion

For the foregoing reasons, both defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment on the issue of contracting authority are DENIED. Because the court agrees with the parties that bifurcation of the trial would be more efficient than trying the issues together, *see* Tr. at 40–42, the trial will be bifurcated into a liability phase and a damages phase. The parties shall confer on the draft scheduling order the court provided to the parties at the February 12, 2004 oral argument. If the parties agree on a schedule for the liability phase of trial, they shall file with the court a proposed schedule on or before Friday, April 2, 2004. If the parties cannot agree on a schedule, they shall contact the court jointly on or before April 2, 2004 to schedule a status conference.

IT IS SO ORDERED.

---

8. The court does not read defendant's motion for summary judgment to include the issue of implied actual authority. Defendant's briefing merely responds to plaintiff's arguments.